**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VALLEY AIR SERVICE, INC., | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | 06 C 782 |
| | ) | |
| SOUTHAIRE, INC. and CENTRAL | ) | |
| FLYING SERVICE, INC., | ) | |
|     Defendants. | ) | |

**MEMORANDUM AND ORDER**

Valley Air Service contracted with Southaire to purchase an airplane which was to be customized by Central Flying Service pursuant to a contract between Central Flying and Southaire. Contending that it is a third party beneficiary of the Central Flying–Southaire contract, Valley Air sued Southaire in state court. After Southaire removed the state court action based on diversity, Valley Air amended its complaint to add Central Flying as an additional defendant. Central Flying seeks to dismiss the claims against it based on lack of personal jurisdiction and improper venue. Alternatively, it seeks to transfer this action to the United States District Court for the Eastern District of Arkansas. For the following reasons, Central Flying's motion to dismiss for lack of personal jurisdiction and improper venue is denied and its motion to transfer venue is denied without prejudice.

**Background**

Regrettably, the parties launch into a discussion of the merits without the benefit of a summary of the relevant facts. The court will thus forge on with no assistance from counsel. Valley Air is an Illinois corporation with its principal place of business in Illinois. Southaire is a Tennessee corporation with its principal place of business in Tennessee. Central Flying is an Arkansas corporation with its principal place of business in Arkansas, and offers aircraft maintenance and service.

Valley Air was interested in purchasing a Citation 550 airplane from Southaire. The contract between Valley Air and Southaire required certain upgrades to the airplane prior to delivery and contained a forum selection clause which required suits arising from the contract to

be filed in Illinois.  As a condition to the contract, Valley Air stipulated that Central Flying would perform the necessary work on the airplane.  According to Valley Air, once the plane was delivered, it had all sorts of problems.  Thus, Valley Air sued Southaire for breach of contract, fraud, and breach of the Illinois Consumer Fraud Act and sued Central Flying for breach of the Southaire-Valley Air contract under a third party beneficiary theory.

Southaire lined up Central Flying to perform work on the plane before Valley Air came to Arkansas to inspect the plane (without any sort of solicitation to do so by Central Flying) and agreed to purchase it from Southaire.  Central Flying would have been the company responsible for upgrading the plane regardless of who purchased it.  Central Flying performed all of the work on the plane at its facility in Arkansas pursuant to the Central Flying–Southaire contract but as specified by Valley Air, the plane's ultimate owner.

According to Valley Air Service's President, Valley Air employees in Illinois had "dozens" of conversations about the plane with Central Flying's employees via telephone, fax, email, and regular mail.  Central Flying ordered parts for the plane after it learned that the work it was performing was for Valley Air's benefit.  Moreover, Central Flying was aware that Valley Air was the plane's ultimate owner and was going to base the plane in Illinois, and thus was aware that Valley Air would be covered by the warranties issued by Central Flying.  Pursuant to the warranty, Central Flying shipped replacement parts to Valley Air's offices in Illinois.  Southaire paid most, but not all, of Central Flying's invoices.

In addition, the plane, which was manufactured by Cessna Aircraft, participates in a maintenance tracking program administered by Cessna known as CESCOM.  Participation in CESCOM requires maintenance facilities to provide reports to CESCOM after certain maintenance or inspections are performed.  These are referred to as maintenance transactions reports, and are maintained by the maintenance facility.  Maintenance facilities can therefore reasonably anticipate an ongoing relationship with aircraft owners to provide maintenance transactions reports at the request of aircraft owners.  In fact, the day following Valley Air's

acceptance of the aircraft, Valley Air faxed such a request from its office in Illinois to Central Flying.

With respect to acceptance of the plane, Valley Air picked the plane up in Arkansas and flew it to Illinois. In an effort to begin generating revenue, Valley Air accepted the plane with side panels not of its choosing based on Central Flying's assurances that the appropriate replacement side panels would be shipped to Valley Air at a future date. The MTRs and side panels were each, respectively, sent into Illinois, directly from, or at the direction of, Central.

Central Flying is based in Arkansas, and is not registered to do business in Illinois, has no offices in Illinois, does not have an agent for service of process in Illinois, has no subsidiaries in Illinois, owns no property in Illinois, and has never filed a lawsuit in Illinois. However, it operates a website (http://www.central.aero/) and runs national advertising. In addition, although it does not keep records of its direct mail solicitations, discovery uncovered one list of recipients, and that list included Illinois owners of airplanes. *See* Response Exhibits G & H.

### Standard for a Motion to Dismiss for Lack of Personal Jurisdiction

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) based on lack of personal jurisdiction, the court may consider matters outside the pleadings, such as affidavits and other materials submitted by the parties. *See* Fed. R. Civ. P. 12(b). The plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). In making its determination regarding personal jurisdiction, the court must resolve any factual disputes in the plaintiff's favor, but must accept the allegations in the complaint as true only to the extent that they are not controverted by other evidence in the record. *Id*. The court must also accept uncontested jurisdictional facts presented by the defendants as true. *Connolly v. Samuelson*, 613 F. Supp. 109, 111 (N.D. Ill. 1985).

Where the court's subject matter jurisdiction stems from diversity of citizenship, as in this case, the court may assert personal jurisdiction over a defendant only if personal jurisdiction would be proper in an Illinois court. *Michael J. Neuman  & Assoc., Ltd. v. Florabelle Flowers,*

*Inc.*, 15 F.3d 721, 724 (7th Cir. 1994). Under the Illinois long-arm statute, Illinois state courts have general jurisdiction over nonresident defendants "doing business" in Illinois and specific jurisdiction over nonresident defendants if the claims arise from their "transactions" in Illinois. 735 ILCS §§ 5/2-209(a) & (b).

The Illinois long-arm statute also contains a "catch-all" provision which allows Illinois state courts to assert personal jurisdiction to the maximum extent permitted by the Illinois and United States Constitutions. 735 ILCS § 5/2- 209(c). Thus, jurisdiction is coextensive with federal due process requirements. *See, e.g., RAR, Inc. v. Tuner Diesel Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). The Due Process Clause of the Fourteenth Amendment to the United States Constitution limits when a state may assert in personam jurisdiction over nonresident defendants. *Pennoyer v. Neff*, 95 U.S. 714, 733 (1878). To assert personal jurisdiction consistent with federal due process, a defendant must have (1) "certain minimum contacts with the forum state such that (2) the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A court's assessment of personal jurisdiction under this standard depends on whether the "general" or "specific" jurisdiction is at issue. *RAR, Inc. v. Tuner Diesel Ltd.*, 107 F.3d at 1277, *quoting Helicopteras Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Specific jurisdiction refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *Id*. at 1277. General jurisdiction is applicable when the lawsuit neither arose nor was related to the defendant's contacts with the forum state. *Id*. Such jurisdiction is permitted only where the defendant has "continuous and systematic general business contacts" with the state. *Id*.

### Specific Jurisdiction

In examining a defendant's contacts with a particular state, the court must determine whether the defendant "purposefully availed itself of the privilege of conducting activities" in the forum state so that it "should reasonably anticipate being haled into court there." *RAR, Inc. v.*

*Tuner Diesel Ltd.*, 107 F.3d at 1277.  In other words, the focus of the court's inquiry must be on the "relationship among the defendant, the forum, and the litigation." *Heritage House Rests., Inc. v. Cont'l Funding Group, Inc.*, 906 F.2d 276, 283 (7th Cir. 1990).  The main factor in specific jurisdiction analysis is foreseeability – was it reasonably foreseeable to the defendant that its action could result in litigation in the state in question.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74 (1985).  Contacts that are "random, fortuitous, or attenuated" are not thus sufficient to establish that a state's exercise of personal jurisdiction over the defendant was foreseeable.  *Heritage House Rests., Inc. v. Cont'l Funding Group, Inc.*, 906 F.2d at 283.  Moreover, in examining the contacts in a specific jurisdiction analysis, the court cannot "simply aggregate all of the defendant's contacts with the state – no matter how similar in terms of geography, time, or substance." *RAR, Inc. v. Tuner Diesel Ltd.*, 107 F.3d at 1277.

Here, Central Flying had numerous contacts with Valley Air as the plane was being remodeled.  While the work was pursuant to the Southaire–Central Flying contract, Central Flying knew that the plane's ultimate owner was going to be Valley Air and knew that Valley Air was a third party beneficiary of the Southaire–Central Flying contract.

Central Flying also knew that it would have to deal with Valley Air in Illinois after Valley Air took possession of the plane because the plane participated in CESCOM, Cessna's maintenance tracking program.  This requires maintenance facilities such as Central Flying to provide maintenance reports after certain maintenance or inspections are performed and to maintain these reports at the maintenance facility.  Valley Air faxed a request from its office in Illinois to Central Flying, so Central Flying communicated with Valley Air even after Valley Air picked up the plane.

In addition, Central Flying knew that it might have to work on the plane once it left Arkansas pursuant to the warranty covering work done to the plane, and sent replacement parts to Illinois under the warranty.  It also shipped replacement side panels to Illinois once Valley Air had possession of the plane.

In short, Central Flying's characterization of the record as supporting the conclusion that Central Flying was off in Arkansas, wholly insulated from any business dealings in Illinois, is simply incorrect. The contacts were not "random, fortuitous, or attenuated." *Heritage House Rests., Inc. v. Cont'l Funding Group, Inc.*, 906 F.2d at 283. Instead, they occurred as a natural and foreseeable consequence of a business relationship flowing from the fact that Valley Air was the third party beneficiary of an almost $2M contract between Southaire and Central Flying which required Central Flying to perform work on a plane as specified by Valley Air. The court, therefore, concludes that it can exercise specific jurisdiction over Central Flying. It thus will not reach the parties' arguments regarding general jurisdiction.

## Venue

Contrary to Central Flying's contentions, venue is proper in this district based on the court's finding that it can exercise personal jurisdiction over Central Flying. *See* 28 U.S.C. § 1391(a)(3). Central Flying alternatively asks the court to transfer this action pursuant to the doctrine of forum non conveniens. *See* 28 U.S.C. § 1404(a). Its motion and supporting memoranda discuss the convenience of Illinois and Arkansas to Central Flying and Valley Air. Notably, these are two of the three litigants before the court, as Central Flying mentions venue in connection with Southaire for the first time in its reply memorandum. The court declines to consider Central Air's forum non conveniens motion at this time, given that any ruling on the merits would be without the benefit of Southaire's views. Accordingly, the court finds that venue is proper in this district and denies Central Flying's motion to transfer venue without prejudice.

**Conclusion**

For the above reasons, Central Flying's motion to dismiss for lack of personal jurisdiction and improper venue [#37] is denied and its request to transfer venue is denied without prejudice.


DATE:   December 15, 2006                         _____
                                                  Blanche M. Manning
                                                  United States District Court Judge