UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VALLEY AIR SERVICE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06 cv 00782 |
| | ) | Judge Blanche M. Manning |
| SOUTHAIRE, INC., *et al.*, | ) | Mag. Judge Michael T. Mason |
| Defendants. | ) | |

## VALLEY AIR SERVICE'S RESPONSE TO
## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Respectfully submitted,

VALLEY AIR SERVICE, INC.

By: _____/s Michael S. McGrory_____
One of Its Attorneys

Alan L. Farkas
Michael S. McGrory
Madsen, Farkas & Powen, LLC
20 S. Clark St., Suite 1050
Chicago, Illinois 60603
Phone: (312) 379-3444

## TABLE OF CONTENTS
### (Pursuant to LR 7.1)

I.   INTRODUCTION…………………………………………………………………..1

II.  BACKGROUND……………………………………………………………………1

III. DISCUSSION……………………………………………………………………..5

     a.   Southaire's Request For Summary Judgment On Count I
        (Breach of Contract) Should Be Denied Because Plaintiff
        Has Put Forth Evidence Establishing That Southaire Delivered
        An Aircraft Riddled With Defects…………………………………………..5

     b.   Southaire And Brunner's Request For  Summary Judgment
        On Count II (Common Law Fraud) Should Be Denied Because
        Plaintiff Has Put Forth Evidence Of A False Statement Of
        Fact And Of Brunner And Southaire's Knowledge Of The
        Falsity Of The Statement…………………………………………………….8

     c.   Southaire And Brunner's Request For Summary Judgment
        on Count III (Consumer Fraud Act) Should Be Denied Because
        The Misrepresentations Made By Southaire And Brunner
        Are Subject To The Consumer Fraud Act…………………………….…..10

     d.   Valley Air Was A Third Party Beneficiary To The
        CFS-Southaire Contract, And Had Its Own Contract With
        CFS. Thus, CFS Is Not Entitled to Summary Judgment On
        Count IV……………………………………………………………...……11

     e.   CFS And Englert Are Not Entitled To Summary Judgment
        On Count V (Negligent Misrepresentation) Because There
        Is No Difference Between Illinois And Arkansas Law And
        Because CFS Is In The Business Of Providing Information…………..…...14

          1.   A choice of law analysis is unnecessary because the
             law of Illinois and Arkansas is the same…………………….…....14

2. The *Moorman* Doctrine does not bar negligent misrepresentation claims against a defendant in the business of supplying information, such as an aircraft inspector……………………………………………………..…15

f. The Illinois Consumer Fraud Act Is Applicable To Valley Air's Action Against CFS And Englert, And Summary Judgment Is Inappropriate………………………………………………..……..17

1. CFS and Englert's violations of the Consumer Fraud Act are sufficiently connected to Illinois for the Consumer Fraud Act to apply…………………………………….…….17

2. Valley Air is a consumer for purposes of the Consumer Fraud Act……………………………………………..…….20

IV. CONCLUSION……………………………………………………………………….22

## TABLE OF AUTHORITIES
### Pursuant to LR 7.1

### CASES

*American United Logistics, Inc. v. Catellus Development Corp.,*
319 F.3d 921 (7th Cir. 2003)……………………………………………………11, 12, 13

*Archer-Daniels-Midland Co. v. Beadles Enterprises, Inc.,*
367 Ark. 1, 238 S.W.3d 79 (2006)…………………………………………………..15

*Avery v. State Farm Mut. Auto. Ins. Co.,*
216 Ill.2d 100, 835 N.E.2d 801 (2005)…………………………….…17, 18, 19, 20

*Barbara's Sales, Inc. v. Intel Corp.,*
227 Ill.2d 45, 879 N.E.2d 910 (2007)………………………………….……20

*Bd. of Educ. of City of Chicago v. A, C and S, Inc.,*
131 Ill.2d 428, 546 N.E.2d 580 (1989)…………………………………...……..15

*Beatty v. Haggard,*
87 Ark. App. 75, 184 S.W.3d 479 (2004)………………………………….……..15

*Brennan v. Persselli,*
353 Ill. 630, 187 N.E.2d 820 (1933)…………………………………….……..9

*Carson Pirie Scott Co. v. Parrett,*
346 Ill. 252, 178 N.E. 498 (1931)……………………………………………11

*Connick v. Suzuki Motor Co., Ltd.,*
174 Ill.2d 482, 675 N.E.2d 584 (1997)…………………………………………21

*Continental Waste System, Inc. v. Zoso Partners,*
727 F.Supp. 1143 (N.D. Ill. 1989) (Aspen)…………………………...………………12

*Cuculich v. Thomson Consumer Electronics, Inc.,*
317 Ill. App.3d 709, 739 N.E.2d 934 (1st Dist. 2000)…………………………21

*Dent-A-Med, Inc. v. Lifetime Smiles, P.C.,*
2006 WL 3147694 (N.D. Ill. 2006) (Leinenweber)…………………………19

*Doe v. Dilling*, 228 Ill.2d 324, 888 N.E.2d 24 (2008)…………………………………..8

*Downum v. Downum*,
101 Ark. App. 243 (2008)……………………………………………………………..15

*Haimberg v. R & M Aviation*,
5 Fed.Appx. 543, 2001 WL 259173 (7th Cir. 2001)………………………………..16, 17

*Int'l Administrators, Inc. v. Life Ins. Co. of North America*,
753 F.2d 1373 (7th Cir. 1985)……………………………………………………..…14

*Klaxon Co. v. Stentor Elec. Mfg.*,
313 U.S. 487, 61 S.Ct. 1020 (1941)………………………………………………..14

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
91 Ill.2d 69, 435 N.E.2d 443 (1982)………………………………………………16

*Orix Credit Alliance, Inc. v. Taylor Machine Works, Inc.*,
125 F.3d 468 (7th Cir. 1997)………………………………………………...……………8, 9

*Pappas v .Pella Corp.*,
363 Ill. App.3d 795, 844 N.E.2d 995 (1st Dist. 2006)…………………………...……10, 11

*Paukovitz v. Imperial Homes, Inc.*,
27 Ill. App.3d 1037, 649 N.E.2d 437 (3rd Dist. 1995)…………………………12, 13, 14

*People ex rel. Resnick v. Curtis & Davis, Architects & Planners, Inc.*,
78 Ill.2d 381, 400 N.E.2d 918 (1980)……………………………………………....12, 13

*Pershall v. Raney*,
137 Ill. App.3d 978, 484 N.E.2d 1286 (4th Dist. 1985)………………………..…………16

*Phillips v. Bally Total Fitness Holding Corp.*,
372 Ill. App.3d 53, 865 N.E.2d 310 (1st Dist. 2007)…………………………………..19

*Priebe v. Autobarn, Ltd.*, 240 F.3d 584 (7th Cir. 2001)…………………………7, 8, 10

*Quinney v. Pittman*, 320 Ark. 177, 895 S.W.2d 538 (1995)………………...……15

*R. Rudnick & Co. v. G.F. Protection, Inc.*,
2009 WL 112380 (N.D. Ill. 2009) (Gottschall)……………………………….…………..18

*Robson v. Robson*, 514 F.Supp. 99 (N.D. Ill. 1981) (Aspen)……………….....………..11

*In re Sears, Roebuck & Co. Tools Marketing and Sales Practices Litigation*,
2006 WL 3754823 (N.D. Ill. 2006) (Grady)………………………………….…………10, 11

*Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899 (7th Cir. 2006)………………………..………10

*Tolan and Son, Inc. v. KLLM Architects, Inc.*,
308 Ill. App.3d 18, 719 N.E.2d 288 (1st Dist. 1999)…………………………………..16

*Tortoriello v. Gerald Nissan of North Aurora, Inc.*,
379 Ill. App.3d 214, 882 N.E.2d 157 (2nd Dist. 2008)………………………....…………22

*Townsend v. Sears, Roebuck and Co.*,
227 Ill.2d 147, 879 N.E.2d 893 (2007)………………………………………………....…..14

## STATUTES

815 ILCS 501/1(b)……………………………………………………………………….21

815 ILCS 505/1(c)……………………………………………………………………….21

815 ILCS 505/1(e)……………………………………………………………………….21

815 ILCS 505/1(f)……………………………………………………………………….22

815 ILCS 505/2……………………………………………………………………….21

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

VALLEY AIR SERVICE, INC.,           )
                                    )
            Plaintiff,              )
                                    )
v.                                  )        No. 06 cv 00782
                                    )        Judge Blanche M. Manning
SOUTHAIRE, INC., *et al.*,          )        Mag. Judge Michael T. Mason
            Defendants.             )

---

## VALLEY AIR SERVICE'S RESPONSE TO
## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

---

Plaintiff, Valley Air Service, Inc., for its response to the Motions for

Summary Judgment filed by Southaire, Edward Brunner, Central Flying Service,

and William "Mike" Englert, states as follows:

### I.      INTRODUCTION

Defendants move for summary judgment on all counts except Valley Air's

common law fraud claim against CFS and Brunner. However, as discussed

below, there exist genuine issues of material fact which preclude summary

judgment on all claims.

### II.     BACKGROUND

Steve and Maureen Cosyns are the husband-wife operators of Valley Air

Services, Inc., a small company in the business of operating charter flights. (<u>Ex.</u>

11, S. Cosyns Dep., pp. 8, 53). Steve is a career pilot, and Maureen lends

1

occasional office support. (Id.). Clients of an air charter service are generally wealthy and discriminating, and demand excellent service in the confines of well-appointed aircraft.

In 2005, the Cosyns' were in the market for a small jet that would allow them to improve the flight experience of their current clients as well as attract new clients. The Cosyns found an Aircraft that seemingly fit the bill when they saw a "Spec Sheet" for a 1983 Cessna Citation 550 ("Aircraft") from Southaire. (Ex. 11, S. Cosyns Dep., pp. 22-23; Ex. 25, Spec Sheet). The "Spec Sheet" described the Aircraft as having no damage history and being on CESCOM, which is Cessna's maintenance tracking program. (Ex. 25, Spec Sheet). The "Spec Sheet" also stated that the Aircraft will be delivered with fresh Phase I-V Inspections, and that both the exterior and interior of the Aircraft will be delivered "New to Customer Specifications." (Id.). The Phase I-V Inspections were an especially attractive enticement because they are an incredibly intensive, thorough and costly (CFS charged $29,500 for Phase I-V Inspections labor alone) series of inspections that would ensure the quality of the Aircraft and its systems. (Ex. 13, Rebechini Dep., pp. 42, 52-53; Ex. 17, Discrepancy List, p. 2; Ex. 18, Brunner Dep., pp. 73-74).

Valley Air and Southaire entered into a Purchase Agreement for the Aircraft in which Southaire made many representations and warranties. (Ex. 9,

Purchase Agreement). The agreed upon price was $1,925,000. (Id.). Southaire

avowed in the Purchase Agreement that the Aircraft was airworthy and FAA

certified; that the Aircraft's records were complete and accurate; that all

inspections, Airworthiness Directives and Mandatory Service Bulletins were

complied with; and that the Aircraft had no structural damage, corrosion, or

damage history. (Ex. 9, pp. 2-3). Southaire also represented that its knowledge of

the Aircraft encompassed its own ownership as well as the experiences of the

previous owner. (Ex. 9, p. 3, ¶ 5(h)). Valley Air and Southaire agreed that Central

Flying Service, Inc. ("CFS") would perform the pre-purchase inspection (which

would include the Phase I-V Inspections) and remedy all discrepancies the

inspections uncover. (Ex. 9, pp. 3-4, ¶ 6).

In the course of their work on the Aircraft, CFS regularly communicated

with Valley Air in Illinois via fax, telephone and email. (Ex. 3, Cosyns Aff., pp. 2-

3, ¶¶ 13-22; Ex. 4, Emails). CFS knew from the beginning that Valley Air was to

be the ultimate user of the Aircraft, and sought Valley Air's input and approval

on various items, and provided updates on the status of their work. (Ex. 14, p. 1,

Invoice to Valley Air; Ex. 15, Shirley Dep., pp. 67-68; Ex. 4, Emails, pp. 1-30). At

one point, Mike Englert, CFS's Director of Maintenance for Light Jets, even

promised Valley Air a "no excuses aircraft." (Ex. 3, Cosyns Aff., p. 3, ¶ 21). At

another point, Englert represented to Valley Air that a boot CFS damaged on the

Aircraft was "not an airworthy issue." (Ex. 4, Emails, p. 27). Additionally, Valley

Air was responsible to CFS for any paint, interior and avionics work in excess of

$100,000. (Ex. 4, Emails, pp. 13-14; Ex. 15, Shirley Dep., pp. 67-68). Moreover, CFS

billed Valley Air directly for certain items. (Ex. 14).

On October 11, 2005, Valley Air took possession of the Aircraft from

Southaire, having been led to believe that CFS properly performed the Phase I-V

Inspections and remedied any discrepancies. (Ex. 3, Cosyns Aff., p. 3, ¶¶ 23-25).

In the following months, Valley Air became aware of numerous discrepancies

that existed at the time Valley Air took possession, but which were never

reported by Southaire, Brunner, CFS or Englert. (Ex. 10, Valley Air Discrepancy

List; Ex. 11, S. Cosyns Dep., pp. 114-173). Valley Air's Complaint contains a more

exhaustive list of these discrepancies, but they include a fuel leak, improperly

sealed windows, improper balance controls, improper paint application, a

malfunctioning throttle, outdated component parts, inaccurate records, and

damage history. (Ex. 22, Complaint; Ex. 10, Valley Air Discrepancy List; Ex. 11, S.

Cosyns Dep., pp. 114-173). Each of these discrepancies should have been

discovered in the course of CFS's inspections. (Ex. 13, Rebechini Dep., pp. 54-55,

85-86). Each of these discrepancies existed at the time of delivery, though they

would not have revealed themselves to Valley Air until after the Aircraft was

flown for some time. (Ex. 13, Rebechini Dep., pp. 110-112, 114-118; Ex. 23,

Kennedy Dep., pp. 87-88; <u>Ex</u>. 16, Milburn Dep., p. 177). Most importantly, each of

these discrepancies affects the airworthiness of the Aircraft; had the FAA been

aware of these discrepancies, it would have grounded the Aircraft. (<u>Ex</u>. 23,

Kennedy Dep., p. 35). Valley Air was led to believe it purchased a safe and

airworthy aircraft, a "no excuses aircraft;" in reality, until Valley Air discovered

the discrepancies left unresolved by Defendants, the lives of each person who

flew aboard the Aircraft was at risk. (<u>Ex</u>. 3, Cosyns Aff., p. 3, ¶ 26).

## III.    DISCUSSION

### a.    <u>Southaire's Request For Summary Judgment On Count I (Breach of Contract) Should Be Denied Because Plaintiff Has Put Forth Evidence Establishing That Southaire Delivered An Aircraft Riddled With Defects.</u>

Southaire argues that Valley Air cannot maintain a breach of contract

action against Southaire because Southaire complied with the Purchase

Agreement by simply delivering the Aircraft. In so arguing, Southaire ignores

nearly the entirety of the Purchase Agreement into which it entered. The

Purchase Agreement did not obligate Southaire to simply deliver the Aircraft;

rather, the Purchase Agreement obligated Southaire to deliver the Aircraft in the

condition promised by Southaire.

The Purchase Agreement describes the Aircraft as having no damage

history, having been on CESCOM, having fresh Phase I-V Inspections, and with

exterior and interior delivered "New to Customer Specifications." Southaire also

explicitly promised that the Aircraft was airworthy, that all Aircraft documents were complete and accurate; that the Aircraft was compliant with all required inspections, Airworthiness Directives and Mandatory Service Bulletins, that the Aircraft had no structural or corrosion damage, and that the Aircraft had no damage history. Valley Air has put forth evidence that the Aircraft did have damage history, that its CESCOM subscription had lapsed, that the Phase I-V Inspections were performed inadequately, that the exterior and interior were not delivered "New to Customer Specifications," that the Aircraft was not airworthy, that the Aircraft's records were not complete and accurate, that the Aircraft was not compliant with all required inspections, Airworthiness Directives and Mandatory Service Bulletins, and that the Aircraft did have structural and corrosion damage. By failing to deliver the Aircraft as promised, Southaire has breached the Purchase Agreement. Summary judgment is thus not warranted.

Southaire's heavy reliance on the testimony of former Valley Air chief pilot Michael Patrick and FAA inspector James Kennedy in support of its contention that the Aircraft was airworthy is errant. Patrick testified that he was not responsible for inventorying discrepancies, and Kennedy acknowledged that his "inspection" was very limited; Kennedy, in fact, spent only about an hour looking at the Aircraft, and never witnessed it in operation. On the other hand, Steve Cosyns and David Spencer (Valley Air's maintenance director) testified

that the discrepancies claimed by Valley Air did exist. And Valley Air has put forth substantial evidence that the discrepancies discovered by Valley Air after delivery of the Aircraft existed at the time of delivery, though they would not become apparent until after the Aircraft had been operated for some time. Additionally, Kennedy, the FAA inspector, testified that if the subject discrepancies existed at the time of delivery, they would have rendered the Aircraft unairworthy.

Southaire's attempt to characterize Valley Air's claim as a breach of implied warranty of merchantability[1] is a misguided and thinly veiled attempt to make a case Southaire likes (*Priebe v. Autobarn, Ltd.*, 240 F.3d 584 (7th Cir. 2001)) seem relevant. In *Priebe,* the seller explicitly disclaimed all warranties, and the conditions of sale and Federal Used Car Buyers' Guide informed the purchaser that no warranties were made; the buyer willingly bought the lemon car "as is." *Id*. at 586. In other words, Priebe got what he bargained for, and had no legal recourse. Here, Southaire *expressly* promised and warranted, among other things, that the Aircraft was airworthy. That Valley Air flew the Aircraft after acceptance has no bearing because Valley Air was not and could not have been aware of the discrepancies. Southaire should not escape liability simply because it took more

---

[1] Valley Air has not alleged that Southaire impliedly warranted anything.

than a one-hour inspection to discover the discrepancies. *Priebe* is inapplicable, and summary judgment inappropriate.

> **b. Southaire And Brunner's Request For Summary Judgment On Count II (Common Law Fraud) Should Be Denied Because Plaintiff Has Put Forth Evidence Of A False Statement Of Fact And Of Brunner And Southaire's Knowledge Of The Falsity Of The Statement.**

Southaire and Brunner argue that they are entitled to summary judgment on common law fraud because their representation that the Aircraft was airworthy was not false. This argument ignores Valley Air's pleadings, the evidence and the law, and does not entitle Southaire and Brunner to summary judgment.

Southaire and Brunner argue that Valley Air cannot sustain the first two elements of fraudulent misrepresentation: "(1) a false statement of material fact; (2) known or believed to be false by the person making it." *Doe v. Dilling*, 228 Ill.2d 324, 342-43; 888 N.E.2d 24, 35-36 (2008). Valley Air need not prove actual knowledge of falsity; rather, the second element can be satisfied "by proving that a misrepresentation was made knowingly or with a reckless disregard for its truth or falsity." *Orix Credit Alliance, Inc. v. Taylor Machine Works, Inc.*, 125 F.3d 468, 478-79 (7th Cir. 1997). It is of no consequence whether Southaire and Brunner knew their misrepresentations were false, or simply made misrepresentations without knowing whether they were true, "'for the affirmation of what one does

not know to be true is unjustifiable, and if another act upon the faith of it, he who

induced the action must suffer, and not the other.'" *Id*. (*quoting Brennan v.*

*Persselli*, 353 Ill. 630, 635, 187 N.E.2d 820, 822 (1933)).

Valley Air has presented proof that the Aircraft was riddled with

discrepancies at the time Valley Air took possession, and that these discrepancies

rendered the Aircraft unairworthy. Valley Air has also presented proof that

Southaire and Brunner knew that their representation of airworthiness was false.

Southaire and Brunner warranted in the Purchase Agreement that they were

intimately familiar with the Aircraft not only under Southaire's ownership, but

also under the ownership of the previous owner. Brunner even admitted in his

deposition that he was aware of the Aircraft's damage history, despite his

warranties to the contrary. For Southaire and Brunner to now disclaim any

knowledge of the condition of the Aircraft strains credulity. Moreover, Southaire

and Brunner disregard that Valley Air has alleged more than one

misrepresentation, and has elicited evidence in support of each. For example,

Southaire and Brunner misrepresented the number of hours on the Aircraft and

its engines, as well as the Aircraft's status on CESCOM. Southaire and Brunner

avowed an extensive familiarity with the Aircraft under its prior owner, and

knew or should have known that the hours were incorrect and that the prior

owner had allowed CESCOM to lapse. Because Valley Air has provided proof in

support of Southaire and Brunner's knowledge or culpable ignorance of the

falsity of their misrepresentations, *Priebe* is again inapplicable.

>    **c.**    **Southaire And Brunner's Request For Summary Judgment On Count III (Consumer Fraud) Should Be Denied Because The Misrepresentations Made By Southaire And Brunner Are Subject To The Consumer Fraud Act.**

Southaire and Brunner contend that summary judgment on the Illinois

Consumer Fraud Act claim is appropriate because Valley Air's case is a simple

breach of contract case. Southaire and Brunner's recitation of the law in this

regard is mistaken. A claim that a defendant failed to fulfill a promise of future

conduct cannot be sustained as a consumer fraud claim. *Shaw v. Hyatt Int'l Corp.*,

461 F.3d 899, 902 (7th Cir. 2006). However, where a defendant misrepresents facts

to induce another to enter into a contract, in the context of a contract, a consumer

fraud action may be sustained. *Pappas v. Pella Corp.*, 363 Ill. App.3d 795, 799, 844

N.E.2d 995, 998 (1st Dist. 2006); *In re Sears, Roebuck & Co. Tools Marketing and Sales*

*Practices Litigation*, 2006 WL 3754823 (N.D. Ill. 2006) (Grady). The *Pappas* plaintiffs

alleged that the defendant failed to disclosed that its windows "would allow

water to enter, causing wood rot and deterioration," (*Pappas* at 800, 999-1000),

and the *Sears* plaintiffs alleged that the defendant misrepresented the country of

manufacture of its tools. (*Sears* at n. 8). In each case, the court allowed the

consumer fraud actions to stand without regard for the contract.

*Pappas* and *Sears* are on directly point. In the present case, Valley Air has alleged in Count III that Southaire and Brunner misrepresented material facts with regard to the history and condition of the Aircraft, not that Southaire and Brunner failed to deliver on some promise of future conduct. This is a proper consumer fraud claim, and neither Southaire nor Brunner are entitled to summary judgment on this Count.

### d. Valley Air Was A Third Party Beneficiary To The CFS-Southaire Contract, And Had Its Own Contract With CFS. Thus, CFS Is Not Entitled To Summary Judgment On Count IV.

CFS argues that they are entitled to summary judgment on Count IV, alleging breach of contract, because Valley Air had no direct contract with CFS and because Valley Air was not a third party beneficiary to the contract between CFS and Southaire. To the contrary, the law and the facts lie in Valley Air's favor, and Valley Air is entitled to maintain this claim against CFS.

 A third-party can sue on a contract if the contract was entered into for the third party's direct benefit. *Carson Pirie Scott Co. v. Parrett*, 346 Ill. 252, 257, 178 N.E. 498 (1931). The contract need not be for the sole benefit of the third party, as long as it is for his direct benefit. *Robson v. Robson*, 514 F. Supp. 99, 101-102 (N.D. Ill. 1981) (Aspen). "A direct third-party beneficiary is a person who, although not a party to the contract, the contracting parties *intended* to benefit from the contract." *American United Logistics, Inc. v. Catellus Development Corp.*, 319 F.3d

921, 930 (7th Cir. 2003) (*emphasis in original*). "[E]ach case must depend upon the intention of the parties as that intention is to be gleaned from a consideration of all of the contract and the circumstances surrounding the parties at the time of its execution." *Id*. at 258. "The intent of the contracting parties with regard to third party beneficiaries is a question of fact, to be determined on a case by case basis." *Continental Waste System, Inc. v. Zoso Partners*, 727 F.Supp. 1143, 1149 (N.D. Ill. 1989) (Aspen).

Several cases support Valley Air's third-party beneficiary claim. In *People ex rel. Resnick v. Curtis & Davis, Architects & Planners, Inc.*, the Illinois Supreme Court allowed a third-party claim by the State of Illinois against the designer of a state prison. 78 Ill.2d 381, 400 N.E.2d 918 (1980). The Court reasoned that the State was identified in the contract as the ultimate user, consulted with the defendant with regard to project specifications, and would directly benefit from construction of the prison. *Id*. at 386, 920. In *American United Logistics,* the Seventh Circuit disregarded explicit contractual language disclaiming any third party benefit and found that, because the third party was acknowledged in the contract and discussions during contract negotiations, the third party claim could proceed. *American United Logistics* at 931. The case most comparable to that at bar is *Paukovitz v. Imperial Homes, Inc.* 27 Ill. App.3d 1037, 649 N.E.2d 437 (3rd Dist. 1995). There, the court allowed the ultimate user of a home to maintain a third

party action against the designer of the home because the designer knew the plaintiff would be the ultimate user and because the designer engaged in direct negotiations with the ultimate user. *Id*. at 1039, 475-79. "It would be inequitable to allow [the designer] to engage in such a course of conduct and then deny that [plaintiff] had any interest whatsoever in the contract between [designer and builder]. *Id*.

There can be no doubt that the contract between CFS and Southaire was for the direct benefit of Valley Air. Valley Air was the purchaser of the Aircraft, and Southaire and Brunner contracted with CFS to perform *pre-purchase* inspections, repairs and refurbishment for Valley Air to enjoy. Southaire and Brunner intended that CFS act as Valley Air's pre-purchase inspector. CFS knew from the beginning that Valley Air was the ultimate user of the Aircraft, and regularly sought Valley Air's input and approval with regard to CFS's work on the Aircraft. Indeed, CFS considered Valley Air a customer. Valley Air was also obligated to pay CFS for some of its services, and CFS even billed Valley Air. Like the plaintiffs in *Resnick*, *American United*, and *Paukovitz*, Valley Air was an intended and direct third-party beneficiary to the contract between CFS and Southaire, and should be permitted to sue as such. It would be inequitable to allow CFS to engage in such a course of conduct and then deny Valley Air had

13

any interest whatsoever in the contract between CFS and Southaire. (*See*

*Paukovitz*). Summary judgment is therefore inappropriate.

> **e.** **CFS And Englert Are Not Entitled To Summary Judgment On Count V (Negligent Misrepresentation) Because There Is No Difference Between Illinois And Arkansas Law And Because CFS Is In The Business Of Providing Information.**

> **1. A choice of law analysis is unnecessary because the law of Illinois and Arkansas is the same.**

CFS and Englert encourage the Court to engage in a choice-of-law analysis

with regard to Illinois and Arkansas law on negligent misrepresentation. Such an

analysis is unnecessary, as the only difference between Illinois and Arkansas

with regard to negligent misrepresentation is semantic. When faced with a choice

of law issue in a diversity action, a federal court is to apply the choice of law

rules of the state in which it sits. *Int'l Administrators, Inc. v. Life Ins. Co. of North*

*America*, 753 F.2d 1373, n. 4 (7th Cir. 1985) (*citing Klaxon Co. v. Stentor Elec. Mfg.*,

313 U.S. 487, 496, 61 S.Ct. 1020, 1021 (1941). "A choice of law determination is

required only when a difference in law will make a difference in the outcome."

*Townsend v. Sears, Roebuck and Co.*, 227 Ill.2d 147, 155, 879 N.E.2d 893, 898 (2007).

In Illinois, the elements of negligent misrepresentation are the same as those of

fraudulent misrepresentation, except that negligent misrepresentation does not

require that a defendant know the misstatement is false; "His own carelessness

or negligence in ascertaining its truth will suffice for a cause of action." *Bd. of*

*Educ. of City of Chicago v. A, C and S, Inc.*, 131 Ill.2d 428, 452, 546 N.E.2d 580, 591 (1989). The Illinois plaintiff must also establish that the defendant owed a duty to the plaintiff to relate accurate information. *Id*.

Arkansas recognizes the same tort, but calls it "constructive fraud." "Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud, and a seller's lack of knowledge of the material representations asserted by him to be true or his good faith in making the representation is no defense to liability." *Beatty v. Haggard*, 87 Ark. App. 75, 84-85, 184 S.W.3d 479, 485 (2004). "In fact, it has been said that constructive fraud generally involves a mere mistake of fact." *Id*. A constructive fraud plaintiff need not prove an intent to deceive. *Downum v. Downum*, 101 Ark. App. 243 (2008). Like negligent misrepresentation, constructive fraud is based on a breach of a duty to supply accurate information. *Id.; Archer-Daniels-Midland Co. v. Beadles Enterprises, Inc.*, 367 Ark. 1, 6, 238 S.W. 3d 79, 83 (2006). Indeed, Arkansas has upheld a constructive fraud verdict against a home inspector. *Quinney v. Pittman*, 320 Ark. 177, 895 S.W.2d 538 (1995). Because negligent misrepresentation is identical to constructive fraud, a choice of law analysis is unnecessary.

> **2.  The *Moorman* Doctrine does not bar negligent misrepresentation claims against a defendant in the business of supplying information, such as an aircraft inspector.**

A claim for negligent misrepresentation against "a defendant in the business of supplying information for the guidance of others in business transactions" is permissible as an exception to the *Moorman* Doctrine, which generally bars recovery in tort for pure economic damages. *Tolan and Son, Inc. v. KLLM Architects, Inc.*, 308 Ill. App.3d 18, 24, 719 N.E.2d 288, 294 (1st Dist. 1999); *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 435 N.E.2d 443 (1982). Incredibly, CFS and Englert argue that an aircraft pre-purchase inspection facility is not in the business of supplying information for the guidance of others in business transactions.

CFS and Englert contend that "no court has applied this duty [under negligent misrepresentation] to aircraft inspection service providers or any similar profession." This contention is false. Inspection services have been found to be subject to negligent misrepresentation. *Pershall v. Raney*, 137 Ill. App.3d 978, 984-85, 484 N.E.2d 1286, 1290 (4th Dist. 1985). In fact, the 7th Circuit specifically held that an aircraft pre-purchase inspection facility is in the business of providing information and can be liable under negligent misrepresentation. *Haimberg v. R & M Aviation*, 5 Fed.Appx. 543, 548-49, 2001 WL 259173, *4 (7th Cir. 2001). In so holding, the 7th Circuit rejected the very same arguments posed by CFS and Englert, stating that the inspection services for an aircraft are not a tangible product, even if the plaintiff contracts for additional services such as

maintenance. *Id.* Indeed, CFS was engaged to inspect the aircraft and identify

discrepancies uncovered by the inspection. A business that conducts inspections,

but is not in the business of providing information, would be worthless. Thus,

CFS/Englert is not entitled to summary judgment on Valley Air's negligent

misrepresentation claim.[2]

> **f.   The Illinois Consumer Fraud Act Is Applicable To Valley Air's Action Against CFS And Englert, And Summary Judgment Is Inappropriate.**
>
> > **1.   CFS and Englert's violations of the Consumer Fraud Act are sufficiently connected to Illinois for the Consumer Fraud Act to apply.**

CFS and Englert misstate the law in their argument that the Consumer

Fraud Act is inapplicable to Valley Air's case. CFS and Englert rely on *Avery v.*

*State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 835 N.E.2d 801 (2005) in support of

this argument. A close reading of *Avery*, however, as well as an examination of

cases discussing *Avery*, makes clear that the 'location of the transaction' analysis

proscribed by *Avery* applies only when the plaintiff is not a resident of Illinois.

Because Valley Air is an Illinois resident, it can maintain its Consumer Fraud Act

claim against CFS and Englert.

The *Avery* court was called upon to determine whether class certification

of a nationwide class was appropriate where the putative class claimed that the

---

[2] Incidentally, if this Court decides to apply Arkansas law to Valley Air's negligent misrepresentation claim, the same result is achieved. This is because Arkansas' tort of constructive fraud is the same as Illinois' tort of negligent misrepresentation.

defendant fraudulently repaired damaged cars with cheaper "non-original equipment manufacturer" parts. *Id*. at 110, 811. The defendants claimed that the trial court erred in applying the Consumer Fraud Act because the Act "does not apply to consumer transactions *involving nonresidents* that occur outside Illinois." *Id*. at 179, 849 (*emphasis added*). Throughout its discussion, the *Avery* court considers the applicability of the Consumer Fraud Act in terms of the plaintiff's residency. *Id*. at 187-190, 854-855. The lower court's error was in certifying a class composed of non-Illinois residents whose transactions occurred primarily outside of Illinois. *Id*.

The Northern District has had occasion to visit this precise issue. *In R. Rudnick & Co. v. G.F. Protection, Inc*., Judge Gottschall rejected the same argument made by CFS and Englert, and held that the Illinois plaintiffs could maintain a consumer fraud action against an out-of-state corporation, even where the fraudulent communications were generated out of state. 2009 WL 112380 at *2 (N.D. Ill. 2009). Judge Gottschall noted, "The faxes were received by consumers in Illinois, and thus to the extent there was an unfair practice, it was felt within this state. That the faxes may have originated in another forum is of no consequence, for as the ICFS's name implies, the focus is on the harm to (and location of) the *consumer*." *Id*. (*emphasis in original*). Similarly, Judge Leinenweber has interpreted *Avery* to stand for the proposition that "A *nonresident plaintiff*

may sue under the Act only if 'the circumstances that relate to the disputed transaction occur 'primarily and substantially within Illinois." *Dent-A-Med, Inc. v. Lifetime Smiles, P.C.*, 2006 WL 3147694 at *5 (N.D. Ill. 2006) (*emphasis added*). Tellingly, in the Illinois cases that have conducted an *Avery* "site of the transaction" analysis, the subject plaintiff was never an Illinois resident. *See, e.g., Landau v. CNA Financial Corp.*, 381 Ill. App.3d 61, 886 N.E.2d 405 (1st Dist. 2008), and *Phillips v. Bally Total Fitness Holding Corp.*, 372 Ill. App.3d 53, 865 N.E.2d 310 (1st Dist. 2007) (upholding the dismissal only of the out-of-state plaintiffs' lawsuits). Because Valley Air is an Illinois resident, the Consumer Fraud Act applies. CFS and Englert's argument to the contrary is ill-reasoned in light of precedent and without support.

Even if the Court does engage in the *Avery* analysis, the Consumer Fraud Act should apply. The *Avery* test is whether the "circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery* at 187, 853-54. Here, Valley Air is an Illinois resident, the injury inflicted by CFS and Englert's fraudulent conduct was felt in Illinois, CFS and Englert transmitted fraudulent statements into Illinois, and Illinois is where the Aircraft is hangared.[3] And, as this Court has noted, "The potential consequences of Mr. Englert's alleged misrepresentation could be disastrous if the plane's alleged defects led to

---

[3] CFS and Englert attempt to frame the *Avery* analysis in terms of Valley Air's transaction with Southaire; this, of course, is improper. Count VII alleges consumer fraud against CFS and Englert, not against Southaire, and is based on the wrongful conduct of CFS and Englert, not Southaire.

an accident, given that Illinois residents who booked flights on the plane could suffer severe personal and financial injuries." (Ex. _, Order of 1/03/08, p. 9). Cases where courts have found the Consumer Fraud Act inapplicable are those where the transaction occurred overwhelmingly in other states. In *Avery*, one individual plaintiff who was discussed lived in Louisiana, damaged his car in Louisiana, stored his car in Louisiana, received a repair estimate and repairs in Louisiana, felt his injury in Louisiana, and communicated solely with the defendant's Louisiana employees; additionally, the alleged deception occurred only in Louisiana. *Id*. at 188, 854. (*See also Landau* at 64, 408).[4] The present case is therefore readily distinguishable from those cases finding the Consumer Fraud Act inapplicable. For these reasons, Valley Air can maintain its Consumer Fraud claim against CFS and Englert, and summary judgment should be denied.

### 2. Valley Air is a consumer for purposes of the Consumer Fraud Act.

Likewise, CFS and Englert's contention that the Consumer Fraud Act does not apply because Valley Air is not a consumer must fail. The Act makes unlawful any "misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression

---

[4] CFS and Englert also cite *Barbara's Sales v. Intel Corp*., 227 Ill.2d 45, 879 N.E.2d 910 (2007) in their argument; as noted in *Landau*, however, *Barbara's Sales* is not relevant to a Consumer Fraud Act analysis because it is concerned with choice-of-law, not the applicability of the Consumer Fraud Act. *Landau* at 63, 408.

or omission of such material fact…in the conduct of any trade or commerce.[5]"

815 ILCS 505/2. The Act defines "consumer" as "any person[6] who purchases or

contracts for the purchase of merchandise[7] not for resale in the ordinary course

of his trade or business but for his use…" 815 ILCS 505/1(e).

The elements of a claim under the Act are: (1) a deceptive act or practice

by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3)

that the deception occurred in the course of conduct involving trade or

commerce." *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 501, 675 N.E.2d 584,

593 (1997). The purpose of the Act is to "eradicate all forms of deceptive and

unfair business practices," which is why a plaintiff need only prove a claim by a

preponderance of the evidence. *Cuculich v. Thomson Consumer Electronics, Inc.*, 317

Ill. App.3d 709, 717-18, 739 N.E.2d 934, 940-41 (1st Dist. 2000). The Act should be

liberally construed to effect its purposes. *Id.* at 716, 393.

CFS and Englert argue that Valley Air cannot make a consumer fraud

claim because CFS did not engage in trade or commerce with Valley Air. Yet, the

terms "trade" and "commerce" are defined within the Act as "advertising,

offering for sale, sale or distribution of any services and any property, tangible or

intangible, real, personal or mixed, and any other article, commodity, or thing of

---

[6] "Person" may be a corporation. 815 ILCS 505/1(c).
[7] "Merchandise" is broadly defined as "any objects, wares, goods, commodities, intangibles, real estate situated outside the State of Illinois, or services." 815 ILCS 505/1(b).

value wherever situated, and shall include any trade or commerce directly or

indirectly affecting the people of this State. 815 ILCS 505/1(f). This is an

exceedingly expansive definition, and is to be construed liberally. Moreover,

nowhere does this definition require that the parties have entered into a contract.

Even if a contract were required, as discussed above, Valley Air did enter into a

contract with CFS and Englert, and was also a third-party beneficiary to the

contract between CFS and Southaire. A third-party beneficiary enjoys the same

contractual rights as a signatory (*Tortoriello v. Gerald Nissan of North Aurora, Inc.*,

379 Ill. App.3d 214, 240, 882 N.E.2d 157, 180-81 (2nd Dist. 2008), so it follows that,

in the unlikely event the Consumer Fraud Act requires a contract, Valley Air's

status as a third party beneficiary satisfies this requirement. CFS and Englert are

therefore not entitled to summary judgment.

## IV. CONCLUSION

For the reasons discussed above, Plaintiff Valley Air respectfully requests

that this Honorable Court deny the pending Motions for Summary Judgment.

Respectfully submitted,

VALLEY AIR SERVICE, INC.

Alan L. Farkas
Michael S. McGrory                    By:        /s Michael S. McGrory
Madsen, Farkas & Powen, LLC                      One of Its Attorneys
20 S. Clark St., Suite 1050
Chicago, Illinois 60603
Phone: (312) 379-3444