# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **VALLEY AIR SERVICE, INC.,**<br>An Illinois Corporation, | ) | |
| | ) | |
| | ) | **Case No.: 06 C 0782** |
| **Plaintiff,** | ) | |
| | ) | **Judge Manning** |
| v. | ) | |
| | ) | **Magistrate Judge Mason** |
| **SOUTHAIRE, INC.,**<br>A Tennessee Corporation, | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S INITIAL DISCLOSURE PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE RULE 26

NOW COMES Plaintiff VALLEY AIR SERVICE, INC., an Illinois corporation, by and through its attorneys, Schnell, Bazos, Freeman, Kramer, Schuster & Vanek, and hereby makes the following Initial Disclosures pursuant to Federal Rules of Civil Procedure Rule 26:

    1.    The following individuals are likely to have discoverable information that the disclosing party may use to support its claims or defenses:

    a)Maureen Cosyns, Valley Air; 416 Renner Dr. Elgin, IL 60123

    b)Stephen Cosyns, Valley Air; 416 Renner Dr. Elgin, IL 60123

    c)Edward Brunner, Paul (pilot for Ed-flew N17WC often) Southaire; 8245 Tournament Dr. Memphis, TN 38125

    d)Central Flying Service, Inc. employees-Bill Woods, Valerie Holeman, John Shirley, Mike Englert and Timothy Snipes; others; 1501 Bond St. Little Rock, AR72202.

    e)J. A. Aero, Inc.; Bruce Rebacini (sp) other employees, 3N060 Powis Rd., West Chicago, IL 60185

**EXHIBIT**

tabbies®

1

f) Rickie Boyd, Advantage Aircraft Sales, Inc.-Ricky Boyd, 1273 Broadway, South Fulton, TN 38257.

g) SWAT-allegedly repaired fuel leaks for Central Flying but Plaintiff confirmed with SWAT that it did not work on plane;

2.    The following documents, data compilations, and tangible things that are in the disclosing party's possession, custody, or control may be used to support said party's claims or defenses:

a) Aircraft sale and purchase agreement-Plaintiff exhibit A to complaint

b)Executed aircraft acceptance certificate exhibit B and attachment

c)Central Flying Service work orders and detail of all work done on subject airplane before delivery-possession of Southaire and Central Flying Service;

d)Cessna Cescom-10 reports

e)J. A. Aero, Inc. work repair orders and records after Plaintiff took possession of subject airplane;

3.    The following is a computation of damages claimed by the disclosing party, with the supporting documentation on which said computation is based being available for inspection and copying pursuant to Federal Rule of Civil Procedure Rule 34:

Answer:    $225,582.27 approximately; investigation continues; see attached Excel summary sheet.

**Respectfully Submitted,**

VALLEY AIR SERVICE, INC., an Illinois corporation

By: _____
Robert Kramer
SCHNELL, BAZOS, FREEMAN,
KRAMER, SCHUSTER & VANEK

U:\Rob\WPRSK\LITIGATE\Valley Air vs. Southaire\Initial Rule 26 disclosure.doc

**CERTIFICATE OF MAILING**

Under penalties as provided by law pursuant to Code of Federal Procedure the undersigned certifies that

she did deposit a copy of the foregoing <u>PLAINTIFF'S DISCLOSURE STATEMENT PURSUANT TO</u>

<u>FEDERAL RULES OF CIVIL PROCEDURE RULE 26</u>, in a U.S. Post Office Box in Elgin, Kane

County, Illinois, by email and enclosed in an envelope, properly and securely sealed with U.S. Postage

fully prepared thereon, and plainly addressed to the person listed below on the 20th day of April, 2006 at

approximately 3:00 p.m.

Mark D. Johnson
Victor J. Pioli
Johnson & Bell, Ltd.
33 W. Monroe St. Ste. 2700
Chicago, IL 60603

Joseph M. Lamonaca, Esq.
127 Commons Court
Chadds Ford, PA  19317

Robert Kramer, Esq., ARDC #01523570
Andrew E. Kolb, Esq., ARDC #6270096
Nicholas J. Johnson, #6283168
Schnell, Bazos, Freeman, Kramer, Schuster & Vanek
Attorneys for Plaintiff
1250 Larkin Ave. Suite 100
Elgin, Illinois 60123
(847) 742-8800

U:\Rob\WPRSK\LITIGATE\Valley Air vs. Southaire\initial Rule 26 disclosure.doc

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VALLEY AIR SERVICE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06 cv 00782 |
| v. | ) | Judge Blanche M. Manning |
| | ) | Mag. Judge Michael T. Mason |
| SOUTHAIRE, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF VALLEY AIR SERVICE, INC.'S ANSWERS TO DEFENDANT, CENTRAL FLYING SERVICE, INC.'S FIRST SET OF INTERROGATORIES

Plaintiff, Valley Air Service, Inc. ("Valley Air") answers the following Interrogatories propounded by Defendant, Central Flying Service, Inc.

## INTERROGATORIES

INTERROGATORY NO. 1: Please state the date on which you first contacted Southaire about the possible purchase of the Aircraft.

ANSWER: *Objection. The interrogatory assumes unproven facts (i.e. that Valley Air "first contacted Southaire"). Without waiving said objection, Valley Air answers as follows: Valley Air contacted a third-party aircraft broker, sometime prior to July 15, 2005 with respect to the purchase of a different airplane, and was informed of the availability of the Aircraft on or about July 15, 2005 by the third-party aircraft broker. Valley Air was contacted by Southaire, Inc. sometime thereafter.*

INTERROGATORY NO. 2: Please state the date on which you first contacted CFS about your possible purchase of the Aircraft from Southaire.

ANSWER: *Presently unknown.*

INTERROGATORY NO. 3: Please state the date on which you first traveled to CFS's facilities in Little Rock, Arkansas to view the Aircraft.

EXHIBIT
tabbies®
2

**ANSWER:** *On or about July 29, 2005.*

**INTERROGATORY NO. 4:** Please state every other date on which you traveled to CFS's facilities in Little Rock, Arkansas.

**ANSWER:** *September 16, 2005, October 7, 2005; and October 11, 2005.*

**INTERROGATORY NO. 5:** Please state the name of every officer, agent and/or employee of Valley Air who communicated in any form with CFS and/or Southaire. If any of these individuals are no longer employed by Valley Air, please provide his or her last known address and phone number.

**ANSWER:** *Stephen Cosyns, Maureen Cosyns. Michael Patrick, 1521 Brittania Way, Roselle, IL 60172-401, (630) 980-4621.*

**INTERROGATORY NO. 6:** Please state the name of every officer, agent and/or employee of Southaire with whom you communicated in any form.

**ANSWER:** *Ed Brunner, Paul (last name unknown).*

**INTERROGATORY NO. 7:** Please state the name of every officer, agent and/or employee of CFS with whom you communicated in any form.

**ANSWER:** *Valerie Holeman, Bill Woods, John Shirley; Mike Englert, Timothy Snipes.*

**INTERROGATORY NO. 8:** Please state the name of every employee of Valley Air who performed any work or maintenance on the Aircraft. If any of these individuals are no longer employed by Valley Air, please provide his or her last known address and phone number.

**ANSWER:** *No "work," as defined in the definitions section accompanying these interrogatories and limited to "activities to be performed on the Aircraft as set forth in the Agreement," was performed by any Valley Air employee. David Spencer performed maintenance on the Aircraft.*

**INTERROGATORY NO. 9:** Please state the name, address and phone number of every individual or entity with whom you contracted to perform any work or maintenance on the Aircraft.

**ANSWER:** *"Work," as defined in the definitions section accompanying these interrogatories and limited to "activities to be performed on the Aircraft as set forth in the Agreement," was*

*performed by Central Flying Service, Inc. and Southaire, Inc. Further answering, the following*

*entities performed maintenance on the Aircraft.*

*J.A. Air Center*
*Lionel Fritz, Director of Maintenance*
*3N060 Powis Road*
*West Chicago, IL 60185*
*630-584-3200*

*Jet Aviation*
*Chicago-Midway Maintenance Division*
*6150 South Laramie Avenue*
*Chicago, IL 60638*
*773-581-5111*

*Cessna Orlando*
*4134 Bear Road*
*Orlando, FL 32827*
*407-859-1245*

*Pratt & Whitney*
*Dave McIntyre*
*43W752 US Highway 30*
*Sugar Grove, IL 60554*
*815-341-2194*

*Central Flying Service, Inc.*
*1501 Bond Street*
*Little Rock, Arkansas 72202*

*Southaire, Inc.*
*8245 Tournament Dr.*
*Memphis Tennessee 38125*

INTERROGATORY NO. 10: Please state the name, address and phone number of every person whom you may call as a witness at the trial of this matter.

**ANSWER:** *See Valley Air's answer to Southaire, Inc.'s Interrogatory 22.*

INTERROGATORY NO. 11: Please state the name, business address, home address and home and business telephone numbers of each person you may call as a witness at the trial of this matter, whether lay or expert. For each expert, who may be called at trial or who is used for consultation and is not expected to be called as a witness but whose work product either (1) forms a basis, in whole or in part, of the opinions of an expert who may be called as a witness, or (2) has been reviewed by any person you may call as a witness at trial, please state the subject matter on which each expert is expected to testify; the mental impressions and opinions held by

each expert, and the facts known and other information furnished to the expert which relate to or form the basis of the expert's mental impressions and opinions.

**ANSWER:**    *See Valley Air's answer to Southaire, Inc.'s Interrogatory 23.*

INTERROGATORY NO. 12: Please provide an itemization of the damages you have allegedly suffered and please state the total amount of damages you have allegedly suffered.

**ANSWER:**    *See Valley Air's answer to Southaire, Inc.'s Interrogatory 24.*

INTERROGATORY NO. 13: Please state the basis for your contention in paragraph 80 of your first amended complaint that Valley Air was an intended third party beneficiary of an agreement between CFS and Southaire.

**ANSWER:**    *Objection. This interrogatory calls for a legal conclusion, and seeks to invade privileged attorney work product.*

INTERROGATORY NO. 14: Please specify all dates on which the Aircraft was flown after it was delivered to you, and identify the pilots who flew the Aircraft on each of those dates. Attach a copy of the current pilot's license and medical certificate for the pilots named herein.

**ANSWER:**    *See Valley Air's answer to Southaire, Inc.'s Interrogatory 2.*

INTERROGATORY NO. 15: Please identify the person who performed the Pre-Purchase Inspection for Plaintiff.

**ANSWER:**    *See Valley Air's answer to Southaire, Inc.'s Interrogatory 5.*

INTERROGATORY NO. 16: Please identify the person who performed the Part 1-V Inspection on the Aircraft.

**ANSWER:**    *See Valley Air's answer to Southaire, Inc.'s Interrogatory 7.*

INTERROGATORY NO. 17: Please identify the date and location of each of Plaintiff's inspections of the Aircraft.

**ANSWER:**    *See Valley Air's answer to Southaire, Inc.'s Interrogatory 8.*

INTERROGATORY NO. 18: As to all aircraft discrepancies listed in paragraph 74 of your first amended complaint, please describe with specificity the exact discrepancy, when it was first noticed, and where it was recorded as a maintenance item/discrepancy.

**ANSWER:**

a.     Aircraft leaks fuel – item noted by Central and logged as a RFQ Item # 5024.  On information and belief, Central has further information responsive to this interrogatory. Documentation is attached to Valley Air's Answer to Southaire Interrogatory 9(a).

b.     Faulty window seal – noted on October 7, 2005.  Central logged as Maintenance Discrepancy Item # 5002.  On information and belief, Central has further information responsive to this interrogatory.  Documentation is attached to Valley Air's Answer to Southaire Interrogatory 9(b).

c.     Improper elevator trim – Central logged as RFQ Item # 5033 on or before August 2, 2005.  On information and belief, Central has further information responsive to this interrogatory.  Documentation is attached to Valley Air's Answer to Southaire Interrogatory 9(c).

d.     Paint, including around main cabin door.

e.     Improper application of registration.

f.     Damaged throttles – The throttles were improperly rigged as discovered by J.A. Air Center.  The aircraft was in the custody of J.A. Air Center to correct a discrepancy for stiff and misaligned throttles as logged in the maintenance logbook on November 3, 2005.  J.A. Air Center discovered the throttles out of rig between November 3, 2005 and November 14, 2005, the date the item was cleared, reflected on J.A. Air Center WO# 14517, Item 101.

g.     Inoperative communication equipment – Pilot's push-to-talk (PTT) Switch was reported inoperative on October 7, 2005.  On information and belief, Central has further information responsive to this interrogatory.  See documentation provided in Valley Air's Answer to Southaire Interrogatory 17.

h.     Malfunctioning co-pilot gyro – Right side HSI precessing 1.5 degrees per minute discovered on October 7, 2005.  On information and belief, Central has further information responsive to this interrogatory.  See documentation provided in Valley Air's Answer to Southaire Interrogatory 17.

*i.*      *De-ice light – item complained of in error. Upon further investigation, Valley Air finds that this item was satisfactorily addressed and is no longer part of Plaintiff's First Amended Complaint.*

*j.*      *MAPCO – logged as defective on October 28, 2005 in the maintenance logbook. Documentation is attached to Valley Air's Answer to Southaire Interrogatory 9(k).*

*k.*      *Galley drain – noted as defective by Central prior to October 11, 2005. On information and belief, Central has further information responsive to this interrogatory.*

*m.*      *Industry Standards – see a-k above in response to this item. Documentation is attached to Valley Air's Answer to Southaire Interrogatories.*

*n.*      *Specifications of the Agreement – see a-k above in response to this item. Documentation is attached to Valley Air's Answer to Southaire Interrogatories.*

*o.*      *Safe Flight – see a-k above in response to this item. Documentation is attached to Valley Air's Answer to Southaire Interrogatories.*

*p.*      *Suitable for safe flight – see a-k above in response to this item. Documentation is attached to Valley Air's Answer to Southaire Interrogatories.*

*q.*      *Safety investigations – see a-k above in response to this item. Documentation is attached to Valley Air's Answer to Southaire Interrogatories.*

INTERROGATORY NO. 19: As to each item identified in response to the preceding interrogatory, please state whether the aircraft was ever flown by any pilot of Valley Air, at any time after delivery with the discrepancies not corrected, and to the extent the discrepancies were corrected please state when, where, and by whom they were corrected and further attach the corresponding maintenance record for the correction.

**ANSWER:** *Valley Air never operated the aircraft with any known discrepancy in contravention of safety or regulatory standard. When items were discovered in flight which necessitated repair prior to subsequent flights the Aircraft was removed from service and the items serviced. Cosmetic items, such as interior color choices have yet to be corrected and the Aircraft performance not affected. Items, including the fuel leak, were found to be within operation limitations, although not within accepted maintenance standards.*

a. *Aircraft leaks fuel – item not repaired. Documentation attached in Valley Air Answers to Southaire Interrogatories.*

b. *Faulty window seal – Central reported to Valley Air that the item was repaired. Item reoccurred on November 3, 2005 and was repaired by J.A. Air Center prior to next flight. See WO# 14517 dated November 14, 2005. Documentation attached in Valley Air Answers to Southaire Interrogatories.*

c. *Improper trim – Aircraft repaired prior to any flight subsequent to discovery of problem. See Maintenance Clearing Action dated October 21, 2005. Documentation attached in Valley Air Answers to Southaire Interrogatories.*

d. *Paint, including around main cabin door – non-grounding item.*

e. *Improper application of registration numbers – non-grounding item.*

f. *Malfunctioning throttles – item allegedly repaired by Central prior to Valley Air taking possession of the Aircraft. Upon discovery on initial flight, November 3, 2005, the aircraft was grounded for repair by J.A. Air Center. See J.A. Air Center WO# 14517, Item 101. Documentation attached in Valley Air Answers to Southaire Interrogatories.*

g. *Malfunctioning communication equipment – item repaired and Aircraft returned to service on October 21, 2005. See WO# 06469 dated October 21, 2005. Documentation attached in Valley Air Answers to Southaire Interrogatories.*

h. *Malfunctioning co-pilot gyro – item repaired and Aircraft returned to service on April 4, 2005. Documentation attached in Valley Air Answers to Southaire Interrogatories.*

i. *De-ice light – item complained of in error. Upon further investigation, Valley Air finds that this item was satisfactorily addressed and is no longer part of Plaintiff's First Amended Complaint.*

j. *MAPCO – Item reported by Central as working, however, was discovered inoperative on and repaired and returned to service on October 28, 2005. Documentation attached in Valley Air Answers to Southaire Interrogatories.*

k. Galley drain – non-grounding item.

m. Industry Standards – see a-k above in response to this item. Documentation attached in Valley Air Answers to Southaire Interrogatories.

n. Specifications of the Agreement – see a-k above in response to this item. Documentation attached in Valley Air Answers to Southaire Interrogatories.

o. Safe Flight – see a-k above in response to this item. Documentation attached in Valley Air Answers to Southaire Interrogatories.

p. Suitable for safe flight – see a-k above in response to this item. Documentation attached in Valley Air Answers to Southaire Interrogatories.

q. Safety investigations – see a-k above in response to this item. Documentation attached in Valley Air Answers to Southaire Interrogatories.

INTERROGATORY NO. 20: On October 28, 2005, was the subject aircraft flown from Palwaukee Airport, (KPWK) to Salt Lake City Airport (KSLC), and then back to KPWK on the same day? If the answer is yes, please state who was the Pilot in Command, and attach a copy of his or her FAA Pilot Certificate, and further describe in detail all discrepancies found during this flight for the subject aircraft.

ANSWER: See Valley Air's answer to Southaire, Inc.'s Interrogatory 18.

INTERROGATORY NO. 21: Please provide the name and FSDO or address of each and every FAA Official that has inspected and/or been involved with the subject aircraft since the delivery date from defendants to Valley Air.

ANSWER: See Valley Air's answer to Southaire, Inc.'s Interrogatory 19.

INTERROGATORY NO. 22: Please provide the name and FSDO of Valley Air's FAA Primary Operations Inspector.

ANSWER: See Valley Air's answer to Southaire, Inc.'s Interrogatory 20.

INTERROGATORY NO. 23: Is the subject aircraft used by Valley Air for Charter under Part 135?

ANSWER: See Valley Air's answer to Southaire, Inc.'s Interrogatory 21.

**INTERROGATORY NO. 24**: Please identify any individual that took any photographs, movies or videotapes of the aircraft since it has been in the possession of Valley Air. Provide the persons, name, address and phone number.

**ANSWER:**    *See Valley Air's answer to Southaire, Inc.'s Interrogatory 26.*

**INTERROGATORY NO. 25**: Please provide the name address and telephone number of each and every passenger that has been on the subject aircraft since its delivery to Plaintiff by defendant.

**ANSWER:**    *See Valley Air's answer to Southaire, Inc.'s Interrogatory 27.*

Respectfully submitted,

VALLEY AIR SERVICE, INC.

By: _____
One of Its Attorneys

Alan L. Farkas
Jeffrey D. Waltuck
Madsen, Farkas & Powen, LLC
20 South Clark Street
Suite 1050
Chicago, Illinois 60603
Phone: (312) 379-3444

## CERTIFICATE OF SERVICE

The undersigned attorney states on oath that he caused a copy of the foregoing **PLAINTIFF VALLEY AIR SERVICE, INC.'S ANSWERS TO DEFENDANT, CENTRAL FLYING SERVICE, INC.'S FIRST SET OF INTERROGATORIES** to be served by depositing a true and correct copy thereof in a sealed envelope, first class postage prepaid in an official depository of the U.S. Mail located at 20 South Clark Street, Chicago, Illinois 60603 on the 20th day of February, 2007, upon the following individuals:

Mark D. Johnson
Victor J. Pioli
Johnson & Bell, Ltd.
33 W. Monroe St. Ste. 2700
Chicago, IL 60603
w/ out attachments

Joseph M. Lamonaca
Joseph Michael Lamonaca, PC
127 Commons Court
Chadds Ford, PA 19317

Chad W. Main
Christopher E. Kentra
Meckler Bulger & Tilson LLP
123 N. Wacker Dr. Ste. 1800
Chicago, IL 60606
w/ out attachments

Charles T. Coleman
Paul D. Morris
Wright, Lindsey & Jennings LLP
200 W. Capitol Ste. 2300
Little Rock, AR 72201

_____
Jeffrey D. Waltuck

## ATTESTATION

I AFFIRM UNDER THE PAINS AND PENALTIES FOR PERJURY THAT I HAVE READ PLAINTIFF VALLEY AIR SERVICE, INC.'S ANSWERS TO DEFENDANT SOUTHAIRE'S FIRST SET OF INTERROGATORIES AND I FIND THAT THEY ARE TRUE, ACCURATE, AND COMPLETE TO THE BEST OF MY KNOWLEDGE AND BELIEF.

VALLEY AIR SERVICE, INC.

By: _____

Print Name: Stephen Cosyns

Title: Pris. Dept

| | | |
|---|---|---|
| VALLEY AIR SERVICE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06 cv 00782 |
| | ) | Judge Blanche M. Manning |
| SOUTHAIRE, INC., *et al.*, | ) | Mag. Judge Michael T. Mason |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF, VALLEY AIR SERVICE, INC.'S
## RESPONSE TO DEFENDANT, CENTRAL FLYING SERVICE, INC.'S
## REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff, Valley Air Service, Inc. ("Valley Air") responds to Defendant Central Flying Service, Inc's Request for Production of Documents as follows:

### REQUEST FOR PRODUCTION OF DOCUMENTS

REQUEST FOR PRODUCTION NO. 1: Please produce all written communications between Valley Air and CFS.

**Response:** *Attached.*

REQUEST FOR PRODUCTION NO. 2: Please produce all written communications between Valley Air and Southaire.

**Response:** *Attached.*

REQUEST FOR PRODUCTION NO. 3: Please produce all documents related to any work or maintenance performed on the Aircraft by Valley Air or a third party related to the alleged deficiencies in the Aircraft which form the basis of this lawsuit.

**Response:** *No "work," as defined in the definitions section accompanying these interrogatories and limited to "activities to be performed on the Aircraft as set forth in the Agreement," was "performed on the Aircraft by Valley Air or a third party related to the alleged*

EXHIBIT

3

*deficiencies in the Aircraft which form the basis of this lawsuit." Maintenance documents are*
*available for viewing and reproduction upon reasonable notice.*

REQUEST FOR PRODUCTION NO. 4: Please produce all exhibits Valley Air may introduce at the trial of this matter.

**Response:** *Valley Air has not yet identified and/or created its trial exhibits. Valley Air may utilize any document previously identified or provided by itself, Central Flying Service, Inc., Southaire, Inc., Cessna Aircraft Corp., Pratt & Whitney, SWAT, Skandia, or any other aircraft component manufacturer, supplier or tester, or any other heretofore unidentified third-party. Further, Valley Air may exhibit any document created by any expert it may hereafter retain. Exhibits will be provided in accordance with appropriate Court order. Valley Air reserves the right to supplement its response to this interrogatory.*

REQUEST FOR PRODUCTION NO. 5: For each person identified as an expert witness, please produce a copy of:

   (a) His or her resume;
   (b) History of testimony;
   (c) All accounting records showing the amounts charged by the experts and the amounts paid by the plaintiffs or their attorneys;
   (d) Each written document (including, but not limited to, correspondence, photographs, reports, and bills) that concerns his or her testimony about, or investigation of, this case; and
   (e) Each document that the expert has reviewed in formulating opinions for the case.

**Response:** *There are no documents responsive to this request at this time. Valley Air reserves the right to amend and supplement its response to this request in accordance with Court order. Further, Valley Air reserves any and all objections to this request until such time as it has identified its expert(s).*

REQUEST FOR PRODUCTION NO. 6: Please produce all documents, including but not limited receipts and invoices, which tend to support the amount of damages Valley Air has allegedly suffered.

**Response:** *The documents are available for viewing and reproduction upon reasonable notice.*

**REQUEST FOR PRODUCTION NO. 7**: Please produce all documents which support your contention that Valley Air was an intended third party beneficiary of an agreement between CFS and Southaire.

**Response:**    *Objection. This interrogatory calls for a legal conclusion, and seeks to invade privileged attorney work product.*

**REQUEST FOR PRODUCTION NO. 8**: Please produce the agreement referenced in paragraph 80 (subpart f) in which Valley Air was allegedly named and otherwise referred to.

**Response:**    *Objection. The interrogatory assumes unproven facts (i.e. that there existed a singular agreement). Further objecting, this interrogatory calls for a legal conclusion, and seeks to invade privileged attorney work product. Further objecting the request is unduly burdensome. The documents are believed to be in the possession of Central Flying Service, Inc. and Southaire, Inc.*

**REQUEST FOR PRODUCTION NO. 9**: Please produce all Pilot Certificates, Pilot Log Book entries, Flight Discrepancy Reports, Maintenance Reports, and flight Plans relating to all dates and persons listed in your response to Interrogatory No. 2.

**Response:**    *There are no documents responsive to this request as it relates to Interrogatory No. 2.*

**REQUEST FOR PRODUCTION NO. 10**: Please produce all FAA Flight Records, Data Tapes, and Flight Plans relating to all dates and persons listed in your response to Interrogatory No. 14.

**Response:**    *See Valley Air's Response to Southaire, Inc's Document Request # 3.*

**REQUEST FOR PRODUCTION NO. 11**: For each and every flight of the Aircraft after the date of delivery, please provide a copy of the FAA Pilot Certificate and Medical of the pilot in command.

**Response:**    *See Valley Air's Response to Southaire, Inc's Document Request # 5.*

**REQUEST FOR PRODUCTION NO. 12**: For each and every flight of the Aircraft after the date of delivery to Valley Air by Defendants, please provide every discrepancy report and the associated maintenance reports.

**Response:** *See Valley Air's Response to Southaire, Inc's Document Request # 6.*

REQUEST FOR PRODUCTION NO. 13: Please provide a copy of all Valley Air FAA Certifications and manuals including but not limited to Part 135 Certificates, DOT Economic Authority Certificates, and Valley Air FAA Approved Operations Manuals.

**Response:** *See Valley Air's Response to Southaire, Inc's Document Request # 7.*

REQUEST FOR PRODUCTION NO. 14: Provide a copy of all Valley Air Pilot Training Certificates including FAR Part 61.58, 135.293 and 135.298 certificates.

**Response:** *See Valley Air's Response to Southaire, Inc's Document Request # 8.*

REQUEST FOR PRODUCTION NO. 15: Please provide copies of all documents relating to the FAA Part 91 inspection of the subject aircraft, and the results of said inspection.

**Response:** *See Valley Air's Response to Southaire, Inc's Document Request # 11.*

REQUEST FOR PRODUCTION NO. 16: Please provide copies of any and all documents relating to the Phase I-V inspection, and the results of said inspection.

**Response:** *See Valley Air's Response to Southaire, Inc's Document Request # 12.*

REQUEST FOR PRODUCTION NO. 17: Please provide any photographs, videos, and movies in your possession of the Aircraft.

**Response:** *See Valley Air's Response to Southaire, Inc's Document Request # 14.*

REQUEST FOR PRODUCTION NO. 18: Please provide any and all documents containing any reference to any of the deficiencies identified by Plaintiff in the complaint.

**Response:** *See Valley Air's Response to Southaire, Inc's Document Request # 15.*

Respectfully submitted,

VALLEY AIR SERVICE, INC.

By: _____
One of Its Attorneys

Alan L. Farkas
Jeffrey D. Waltuck
Madsen, Farkas & Powen, LLC
20 South Clark Street
Suite 1050
Chicago, Illinois 60603
Phone: (312) 379-3444

# CERTIFICATE OF SERVICE

The undersigned attorney states on oath that he caused a copy of the foregoing **PLAINTIFF, VALLEY AIR SERVICE, INC.'S RESPONSE TO DEFENDANT, CENTRAL FLYING SERVICE, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS** to be served by depositing a true and correct copy thereof in a sealed envelope, first class postage prepaid in an official depository of the U.S. Mail located at 50 South Clark Street, Chicago, Illinois 60603 on the 20th day of February, 2007, upon the following individuals:

Mark D. Johnson
Victor J. Pioli
Johnson & Bell, Ltd.
33 W. Monroe St. Ste. 2700
Chicago, IL 60603
w/ out attachments

Joseph M. Lamonaca
Joseph Michael Lamonaca, PC
127 Commons Court
Chadds Ford, PA 19317

Chad W. Main
Christopher E. Kentra
Meckler Bulger & Tilson LLP
123 N. Wacker Dr. Ste. 1800
Chicago, IL 60606
w/ out attachments

Charles T. Coleman
Paul D. Morris
Wright, Lindsey & Jennings LLP
200 W. Capitol Ste. 2300
Little Rock, AR 72201


Jeffrey D. Waltuck

**VALLEY AIR SERVICES REPORT**
**CITATION II S/N 550-0478**

March 14, 2008

PREPARED BY:

RICK MILBURN

MILBURN & ASSOCIATES, INC.
15 WEDGEWOOD DR.
GALENA, ILLINOIS 61036
815-777-1600

The following report has been prepared as a service to the law firm Madsen, Farkas, & Powen, LLC. 20 S Clark St. Suite 1050, Chicago, IL. 60603.

**BASIS OF OPINION:**
The opinions in this report are solely those of Milburn & Associates, Inc. These opinions are based on the review of the depositions presented to me in this case as well as various exhibits also presented to me. Additionally I have used information available in the Citation 550 Maintenance Manual, on the internet, the Aircraft Blue Book, various trade publications, present & past experience and industry knowledge. The opinions in this report are related to the purchase of the aircraft by Southaire, Inc., services performed by Central Flying Service, Inc. ("CFS"), the sale to Valley Air Service, Inc. ("VAS"), and values of the aircraft before, during, and after the sale. These opinions will be stated to a reasonable degree of certainty under the standards generally followed and accepted by aviation professionals and/ or supported by the Manufacturer's Maintenance Manual and case documents.

**QUALIFICATIONS:**
Rick Milburn has been in the Corporate and General Aviation Industry for thirty six (36) years. His experience level covers aircraft from single engine piston through larger jets. He began his career as an FAA Certified Avionics Technician. Other positions have included Avionic Manager, General Manager, Aircraft Sales Manager, Vice President, and Co-Owner at three of the largest full service/sales facilities in Illinois.
- Capitol Aviation/Garrett Aviation, Springfield, Illinois
- Walston Aviation (now West Star Aviation), Alton, Illinois
- JA Air Center/JA Aero, Inc., West Chicago, Illinois

Presently Milburn is the owner of Milburn & Associates, Inc. an aviation consulting company and AvSales, Inc a registered aircraft dealer and broker. Both companies are Illinois corporations with a focus on light aircraft to mid-sized jets. Milburn has either directly sold or supervised the sale of nearly 1000 aircraft in the last twenty eight years including Citation aircraft (Like the subject aircraft).



EXHIBIT

tabbies

4

-2-

Milburn has been directly involved with the sale and acquisitions (including pre-purchase evaluations) of a number of Citation aircraft.

In doing so he has worked closely with maintenance personnel both as a customer and as a manager of a maintenance/service facility. Having had this first hand experience, he has gained a well rounded knowledge of FAA maintenance requirements and learned to use maintenance experts to advise in maintenance situations, as well as an appreciation of how these issues are typically dealt with in the industry. At the time of this writing AvSales, Inc. has one Citation V under brokerage contract and is monitoring its progress through a major scope of maintenance including Phase 1-5 inspections, double hot section inspections and gear replacement.

Prior to his civilian career Milburn served in the U.S. Air Force for four years and graduated from Aircraft Electronic School. Milburn was awarded the Air Force Commendation Medal for his efforts in Southeast Asia.

Before joining the Air Force Milburn majored in Business Administration at Illinois State University. Milburn has also attended several non-credited business and technical courses.

## INDUSTRY RECOGNITION:
- Top 40 Young Aviation Managers – FBO Magazine
- Managed two Top Five Avionics Shops – Professional Pilot Magazine
- Man of The Year 2004 – Chicago Area Business Aviation Association(CABAA)
- Board of Advisors – several major Avionics Manufacturers

## PROFESSIONAL AFFILIATIONS:
- NBAA – National Business Aviation Association
- CABAA – Chicago Area Business Aviation Association – Past President/Director
- CABAA Educational Foundation – President

## PRIOR LEGAL DEPOSITIONS/TESTIMONY (last four years)
- 2007 Condo Association Suit against a contractor. State of Mississippi Waverly Place Condo Association v. Tabor Construction, Parker Roberson Construction, Sto Corporation, and Sto of Louisiana – gave deposition

## EXPERT WITNESS COMPENSATION
Milburn & Associates is being compensated at a rate of $125.00 per hour.

-3-

## VALLEY AIR SERVICE

### CASE OPINIONS

Throughout this report there are references to Mr. Brunner and Southaire, Inc. For clarification, when one is referenced they are meant to be one in the same, Brunner meaning Southaire and Southaire meaning Brunner. The same holds true for Mr. Englert and CFS, Englert meaning CFS and CFS meaning Englert.

### PURCHASE BY SOUTHAIRE:

After reviewing the depositions of Mr. Brunner (May 29, 2007), Mr. Winegardner (Dec. 4, 2007), and exhibits #56, 57 & 60, I find the transaction to purchase by Southaire unusual and not to industry standards, to say the least. This may have little to do with the (Valley) case but I feel that it somewhat sets the tone of the whole transaction. I find it very unusual and not to normal industry standards that Brunner would act as a broker for AvTran, LLC to purchase an aircraft (550-0478) in the amount of $1,325,000 and in the same day Southaire, Inc. (Brunner's company) purchased it from AvTran, LLC. for $1,425,000. The purchase prices are addressed in this report (Aircraft Values) and are less concerning than the fact that Southaire/Brunner could have bought the aircraft directly from Forest Hills Corporation since he was the broker for the AvTran transaction. Brunner could have spent $100,000 less than he ultimately paid. According to Brunner, AvTran, LLC financed it for Southaire, Inc. This may suggest there were some improprieties in this transaction(s). This series of transactions are not common or to industry procedures.

It would also be unusual for Southaire to pay a commission to Paul Eremea (Eremea Dec.4, 2007) after Southaire sold the aircraft when he was only involved in the Southaire purchase. I suppose that paying a commission to a person Mr. Winegardner considered "his pilot" might not seem ethical. It certainly would not be common in the industry to compensate an employee or assumed employee of the other party monetarily.

As discussed more fully below, Southaire's acquisition cost was below market value for this aircraft. All parties involved in the transaction were knowledgeable and sophisticated. Therefore, the price is strongly indicative of Southaire's knowledge that the aircraft was being sold in a distressed condition.

Based on Brunner representations of the aircraft and his relationship to the pilot that had been flying for the last several years, he should have been knowledgeable of the condition and history of the aircraft.

-4-

## SOUTHAIRE SALES/MARKETING:

Southaire placed the aircraft for resale as soon as they bought the aircraft and presented specifications that not only listed the equipment specifications of the aircraft but also the additional work that was contracted for with CFS. VAS reasonably relied on these specifications to be accurate and therefore found the aircraft to be suitable to replace the Citation that had been removed from their Charter operation as it was represented. An aircraft with fresh inspections, new paint, and interior could be put to work immediately and VAS would realize a reduced amount of downtime and lost revenue.

## SERVICES BY CENTRAL FLYING SERVICE:

There are several depositions and exhibits referenced in regards to CFS's work on Citation II S/N 550-0478. I will note each by name and date or exhibit number when appropriate.

Brunner put the aircraft into maintenance as soon as he purchased the aircraft and advised CFS to do a cursory pre-purchase, and then a Phase 1-5 inspection. Once he had contracted with VAS, the Phase 1-5 was to become the VAS pre-purchase inspection, according to the sales contract between Southaire and Valley Air Service. This Phase 1-5 had already been requested by Brunner and was represented to the potential buyers (per specification sheet) and ultimately VAS as being done to the manufacturer's requirements (see sales contract). At that time CFS was performing the work per contract for VAS as well as Southaire. CFS contracted for other items with VAS, as well.

Brunner requested (exhibit #15) a records check and a phase 1-5 inspection under Part 91 (private operator not for hire). Even though Brunner requested this service, on the Aircraft Documentation Survey Request & Authorization (exhibit # 3) he declined Time Limited items. Items which would determine current status of all components with mandatory time change requirements. An example of this is the Flap Gear Box (see Smith April 16, 2007) page 23 item 5- 12. Mr. Dewayne Smith states that the customer fills out the survey sheet and decides what he/she wants CFS to check in the inspection. In this case Brunner did not check the Time Limited Items (items that have to be replaced or serviced at a certain time), therefore Smith said that CFS had no obligation to replace out the flap gear box that was due within days of the delivery. Mr. Smith in his deposition (April 16, 2007) states to following, "if your unwilling to pay the bill, I'm not held responsible for the airworthiness of your aircraft. So in other words, if he don't pay for it we don't provide the service". (Page 27 item 2) It is with a reasonable degree of certainty that I believe that the Time Limited items must be done. Chapter 4 of the Citation II Maintenance Manual says that "Replacement Time Limits (4-10-00) gives the life-limited components, that are TO BE REPLACED at a specified time. Neither Mr. Brunner nor Mr. Englert or Mr. Smith has the option to defer Time Limited items.

-5-

Under Part 91 the inspections called out by the Manufacturer's Maintenance Manuals have to be followed or the inspection cannot be signed off as "complete". The Phase 5 (complete Airframe inspection) in this case can't be signed off as complied with, even if noted that items had been deferred. The reason for this is CFS did not comply with the inspection requirements of the Manufacturer's Maintenance Manual or other specific manuals approved by the manufacturer. Therefore "Airworthiness" did not exist. I would defer to a Maintenance Expert to discuss this issue in any greater depth.

Mr. Brunner told Valley Air that he would deliver a "no excuses" aircraft. Valley Air reasonably understood this to mean that Southaire was not to spare any expense or defer any items that would come up during the inspection. Yet this was not the case.

It became common knowledge that the ultimate owner of the aircraft would be Valley Air Service, Inc. yet there is no evidence that anyone at CFS advised that the inspections that were requested by Southaire would not comply with the requirements of Part 135 (passengers for hire). They did not advise Valley Air that Service Bulletins required for Part 135 were not being complied with either. Valley Air, on the other hand, could rightfully think that the aircraft was getting a Phase 1-5 that would meet his requirements and needs. Based upon my experience and industry knowledge, the maintenance facilities have a duty to inform the potential owner/operator of possible requirements in addition to what work was being done. I believe this is standard in the industry. An example would also be the L/H Aileron Balance weight that will have to be replaced the next time the weight has to be adjusted (Exhibit 22 CFS (0102)). This is part of the unfortunate history that should have been revealed as part of the pre-purchase inspection because it significantly affects the value and marketability of the aircraft and would be material to any prospective purchaser's decision to proceed with a purchase of the aircraft. This shoddy workmanship could also alert a prospective purchaser to expect additional problems.

It appears that CFS is under the impression that they can decide or the customer can decide what should be repaired or not during the course of the inspection. Under Part 91, the Manufacturer's Maintenance Manual will describe how items must be serviced or repaired. If, for instance, the deice light is inoperative, it is therefore unairworthy because it is part of an inspection requirement. Mike Englert (April 16, 2007) on page 100 item 15 says that he would have to get the customers approval to make a repair that is clearly part of the Phase inspection. However, if there is no repair or replacement made per the manual then it is unairworthy and the inspection is not complete.

CFS has demonstrated a lax approach to determining what is airworthy and lack of attention to detail. Dewayne Smith (April 16, 2007) describes missed items as "over sights." The Complaint points out several items, such as the Mapco, the de-ice light, cabin drawers, galley drain, glare shield extensions, and improperly installed door lock, that are prime examples of carelessness, and are all items that are part of the inspection process.

-6-

During the process of stripping the aircraft for paint, CFS notes that there were "major dents" that had been filled by parties unknown. The dents were described as being all along the tops of the wings and fuselage. My industry knowledge and experience (purchased twelve aircraft with hail damage) with this type of dent would normally indicate hail damage.

In the depositions, the dents were described as major which would also indicate hail damage. It would be a normal course of action in the aviation industry to have the aircraft surfaces determined airworthy and not risk safety of flight. Secondly if the damage was repaired, a log book entry would be made reflecting the repair of the hail damage. In this case there was no log entry for the repair (filling) of the damaged surfaces. It is a standard in the industry that physical damage to any aircraft and the method of its repair can cloud the value of the aircraft for many years. (See Aircraft Values Section). Once again, this is a condition that should have been revealed to VAS as part of the unfortunate history and should have been revealed as part of the pre-purchase inspection. This item significantly affects the value and marketability of the aircraft and would be material to any prospective purchaser's decision to proceed with a purchase of the aircraft.

As for the paint work itself at CFS, Mr. John Shirley testified as follows when asked about doing a better job with the paint. (Shirley Dec.3, 2007 page 22). "In order to prevent issues like I see in front of me from taking place, you would have to go back to a total bare skin and do all the buildups from that point forward." Mr. Shirley also said "That is pretty much just an industry standard. I mean it's atypical, you know, you don't go remove all filler on an aircraft when you're repainting it."

I have learned through experience in the industry that if the filler is not removed when the aircraft is stripped, the stripper will penetrate the filler and two things may happen.
- The filler may soften/crack and fall out
- The stripper can penetrate to the airframe surface and cause corrosion

### AIRCRAFT PURCHASE BY VALLEY AIR SERVICE:
Valley Air Service (VAS) bought Citation II S/N 550-0478 in October, 2005 from Southaire, Inc. for a purchase price of $1,913,667.00 (Exhibit #40). An aircraft sales/purchase agreement commonly used in the industry contained the terms and condition of the sale as well as exhibits. (Exhibit#15) The sale was conducted under the Laws of Illinois and the title of the aircraft was transfer to Valley Air Service, Inc via a Warranty Bill of Sale. The sales agreement and the terms and conditions were typical of that normally used in the aviation industry. The closing was handled through an Escrow account at AIC Title in Oklahoma City.

VAS, as is normal in the aviation industry, would have relied heavily on the representations of the seller contained in the initial solicitation and in the sales contract.

-7-

The sales contract provides:

Section 5(b): The Aircraft has a valid FAA Certificate of Airworthiness and is in airworthy condition with all systems in normal operating condition, per manufacturer's maintenance and operating manuals and specifications.
Section 5(c); "All log books" (ii) for the period prior to the date the Aircraft was owned by Seller, true, complete, and correct to the best of the Sellers knowledge." (Cescom reports were, in fact, missing).
Section 5(d): The Aircraft has had all required inspections to the date of Closing and all Airworthiness Directives and Mandatory Service Bulletins have been complied with.
Section 5(h): "No damage history is reflected in the Aircraft's records from the time of the first delivery by the manufacturer, except as specifically noted in Exhibit "B"."
Section 6.2(a): The Aircraft and the Aircraft documents have already been delivered to Central Flying Service, Little Rock, Arkansas ("the Inspection Facility") for the purpose of enabling the Inspection Facility to conduct (at seller's expense) an inspection ("Pre-Purchase Inspection") of the Aircraft. (The pre-purchase inspection requested by Brunner was insufficient by industry standards).

Each of the above items has been addressed in this report and should be construed as having not been complied with.

VAS also relied on CFS to perform the maintenance to industry standards and to the level that the FAA has entrusted them with in their Repair Station License. VAS relied on CFS to know the FAA regulations and to perform the work to the requirements necessary to return the aircraft to service in the condition as described by the seller in the sales agreement

VAS relied on CFS to provide a complete and indisputable maintenance history after their work was complete. An aircraft with uncertain records, questionable engine and airframe times and incomplete inspections will undoubtedly be of less value and take longer to sell than an equal aircraft with reliable records and maintenance history.

The aircraft was accepted in Little Rock, Arkansas after a test/acceptance flight. VAS requested a second flight, but this request was denied. It was not an unreasonable request, especially since VAS offered to pay for the flight. The denial of the second flight unreasonably forced VAS's hand to depart with the aircraft as is.

-8-

VAS relied on the representations by Mr. Englert that all the issues were addressed before the acceptance. Mr. Englert had a responsibility to provide an honest reporting of the pre-purchase inspection.

It is also normal that the aircraft might not be returned to the maintenance facility that is responsible due to the long distance and expense involved in returning to that facility. In those cases the seller would make arrangements with the buyer to have the work accomplished at another facility unless it is warranted by another party. If the work is warranted by a third party, then the seller who was paying their bill would normally negotiated with the maintenance facility so the buyer can have the work done somewhere else. In this case VAS had no confidence in CFS's ability to repair the aircraft.

### AIRCRAFT VALUES:

The values placed on an aircraft by an appraiser for a bank is based strictly on the specifications, times, condition, etc. that is presented to him/her and is assumed correct. The difference between an appraisal and the actual market value can differ drastically. One of Milburn & Associates, Inc. associates (Aviation Management Consult, Inc.) is a Certified Member of the American Society of Appraisers. The two companies work together on projects for this very reason.

To reestablish an estimated retail value of the aircraft at the time of the sale is difficult at this time. With the use of the Summer 2005 Blue Book as a basis for an average aircraft plus or minus the options or deficits of the aircraft in question, will give us a very good estimate of the retail value, and this is the standard method used in the industry.

2005 Retail Average Book Value  $1,725,000.00 (Time of Sale to VAS)
Recent RVSM Compliance  $50,000 - $100,000 (Reversed Vertical Separation Minimums)
Recent Hot Sections (Engines) $60,000- $80,000
Fresh Phase 1-5 Inspections            $29,500.00
Fresh Paint & Interior                 $100,000.00
Retail Price Range Summer 2005  $1,964,500.00 - $2,034,500

2005 Wholesale Average Value  $1,500,000.00 (Time of Purchase by Southaire)
Resent RVSM Compliance  $50,000 - $100,000
Recent Hot Sections (Engines)$60,000 - $80,000
Needed Phase 1-5 (as quoted)           ($61,400.00)
Needed Paint & Interior                ($29,500.00)
Needed Paint & Interior                ($100,000.00)
Wholesale Price Range 2005             $1,419,100.00 - $1,489,100.00

-9-

If VAS had known all the facts of the condition of the aircraft, that CFS had not complied with the Manufacturer's Maintenance Manual, that there was undisclosed hail damage, that there was no thorough Pre-Purchase Evaluation, that there were missing Cescom Reports, and questions about the actual times on the aircraft and engines, then VAS would have reevaluated the purchase price. Based on the items listed above the Actual Purchase Price should have been in the range of $1,675,000.00. This number is arrived at as follows:

| | |
|---|---|
| Actual Selling Price | $1,925,000.00 |
| Hail Damage | (200,000.00) minimum |
| Cescom/Log Reconstruction | (10,000.00) |
| Reconstruct actual Times | (10,000.00) |
| Re-verify Phase 5 and S/B | (30,000.00) |
| Actual Value at Time of Sale | $1,675,000.00 |

Based on these figures, at the time of the sale the selling price fell into the Retail selling range, but the actual value would have been less if the facts been known. The price that Southaire bought the aircraft for was closer to a Forced Liquidation Value.

The major variable to the Retail value would be the hidden hail damage that was never revealed in the logs. As stated before, physical damage leaves a lasting cloud on the value of the aircraft forever. Based on the experience of owning aircraft with hail damage (for resale), and my experience in the industry, it is my opinion that the depreciation for hail damage would be ten (10%) to fifteen (15%) percent. At retail that could have varied the value by $200,000.00 to $300,000.00. The other variables are listed above. What are not listed are the many discrepancies that were found at the inspection, such as the Aileron weight that will have to be replaced.

Rather than purchase the aircraft at a reduced price, however, it would be far more likely and reasonable for a purchaser in the position of VAS, who is purchasing the aircraft for actual use, to decline the purchase and find an aircraft with a more reliable history..

**REPORT SUMMARY:**
- The aircraft was purchased by AvTran, LLC and Southaire, Inc in a transaction that is uncommon to what is normal in the industry.
- Southaire paid a $100,000 premium by involving AvTran
- A commission was paid to the pilot of the past owner, which is not normally done in the industry. He was an employee or assumed employee of the previous owner.
- There was never a pre-purchase inspection done for AvTran as required in their purchase agreement and an incomplete evaluation for VAS at Brunner's request.
- Brunner did only a cursory inspection of the aircraft. He did much less than normally expected in the industry. (see sales contract)

-10-

- Brunner requested that none of the Time Limit Items be checked during the Phase inspections.
- CFS employees honored Brunner's request on Time Limit items and testified that this is permitted under Part 91 rules.
- Part 91 inspections must be done per the Manufacturer's Maintenance Manual and Chapter 4 clearly states that Time Limit Item are TO BE REPLACED at a specific time. There is no allowance for deferral.
- CFS employees failed to disclose to Valley Air Service (VAS) that there were service bulletins that would be required for Part 135 that were not being addressed in the inspections. This is the common practice within the industry.
- More than one employee of CFS testified that they allow customers to elect what inspections are done under Part 91, which is contrary to the guidance of the Manufacturer's Maintenance Manual.
- CFS credits the numerous smaller discrepancies left undone to "oversights"
- After stripping the aircraft for paint it was discovered that the tops of the wings and fuselage was covered with "major dents" and had been filled with bondo filler. The major dents were most likely unrecorded hail damage.
- Hail damage should be recorded in the log books after repair and return to service.
- CFS employees testified that the filler used on the aircraft was not removed after the aircraft was stripped.
- Chemical stripper will destroy the filler and cause it to pop out. The stripper will also penetrate to the aircraft skin and cause corrosion.
- VAS bought the aircraft under Illinois Law, per the terms of the sales agreement, and title was transferred via Warranty Bill of Sale.
- VAS reasonably and necessarily relied on the representations of the seller and CFS as to the actual condition of the aircraft.
- The aircraft was delivered to VAS in Little Rock, Arkansas with known discrepancies which both parties agreed to as not being corrected.
- The seller should have assisted VAS in having the repairs done without returning to CFS. This is common practice within the industry.
- At the time of purchase the price VAS paid was within the Retail price range. This price is higher than its actual worth when considering the damage history and maintenance performed.
- The prices that Southaire and certainly AvTran paid for the aircraft were at below wholesale market and closer to a Forced Liquidation Value.
- Physical damage to an aircraft diminishes the value permanently.

-11-

- The undisclosed hail damage would have a depreciation effect on the aircraft of ten percent (10%) to fifteen percent (15%) or $200,000.00 to $300,000.00
- This aircraft was bought of Commercial use and downtime for additional maintenance is very very costly due to the lost revenue at the time of maintenance.

By: _____

Rick W. Milburn
President

J A Air Center
3N060 Powis Road
Du Page Airport
West Chicago, IL. 60185
630/584-3200
630/584-7883 Fax Number
FAA Approved Repair Station NF2R029L

Customer Id. 724010
VALLEY AIR SERVICE
416 RENNER DRIVE

ELGIN        IL 60123-6903

Registration # N17WC
Make......... CESSNA
Model......... C550
Serial Number. 550-0478
Aircraft Time.    6,504
Date In....... 2/28/06
Date Completed 2/28/06

----------------------------------------------------------------

Billing Summary
Inside Labor Charges                          445.0
Materials And Accessories                       3.6
Misc. Other & Freight                          15.3
Tax At .0675                                     .2

PAY THIS AMOUNT                                464.2

I hereby authorize the above repair work to be done along
with necessary materials. You and your employees may operate
above aircraft for purposes of testing. Inspection or delivery
at my risk. An express mechanic's lien is acknowledged on above
aircraft to secure the amount of repairs thereto. You will not
be held responsible for loss or damage to aircraft or articles
left in aircraft in case of fire, theft, accident, freezing,
or any other cause beyond your control.
----------------------------------------------------------------
ENDORSEMENTS ENTERED IN LOG BOOK
                              Progressive
Preliminary Insp....._____  Operations 1-2-3-4.._____
Hidden Damage Insp.._____   50 Hour............._____
Progressive Insp...._____   100 Hour............_____
Final Insp........._____    Annual.............._____
----------------------------------------------------------------
Work Performed By........  Employee No___  Date 2-28-06
Preliminary Inspection...  Employee No___  Date 2-28-06
Hidden Damage Inspection.  Employee No___  Date 2-28-06
Final Inspection.........  Employee No___  Date 2-28-06
Approved By.............   Employee No___  Date 2-28-06
The Aircraft and/or components identified above were repaired
and inspected in accordance with current regulations of the
Federal Aviation Agency and was found airworthy for return to
service. Pertinent details of the repair are on file at this
agency under

Work Order No 14766        Date 2/28/06
Signed_____
    BRUCE P. REBECHINI

**EXHIBIT**

5

"WE SERVICE WHAT WE SELL"

## Flat Rate & Inside Labor Charges

| Item | Discrepancy | Amount |
|------|-------------|--------|

600     AD2006-04-10 MIS-WIRE OF FIRE EXTINGUISHING BOTTLES-
COMPLIED WITH AD2006-04-10 AS PER TABLE 1 OF THE AD BY
COMPLIANCE OF SB550-26-05 AND INSTALLING SERVICE KIT AS PER
STEPS 1 THRU 11. NO FURTHER ACTION IS REQUIRED.
Labor Hours          .5   @ 89.00 /Hr                            44.50

625     COMPLY WITH SB550-26-05 TO PREVENT MIS-WIRE OF FIRE
EXTINGUISHING BOTTLES-
COMPLIED WITH SB550-26-05 BY INSTALLING SERVICE KIT AS PER
PAGES 1 THRU 11.   NO FURTHER ACTION IS REQUIRED.
Labor Hours          4.5  @ 89.00 /Hr                           400.50

## Material And Accessories

| Part# | Description | Qty | Price | Amount |
|-------|-------------|-----|-------|--------|
| MS25171-1S | NIPPLE | 2 | 1.81 | 3.62 |

Total Materials And Accessories                          3.62



J. A. AIR CENTER

## Miscellaneous Charges

| Ven# | Services | Repairs | Other | Freigh |
|------|----------|---------|-------|--------|
|      | MISC EPA |         | 15.35 |        |
| Total Outside Services | | .00 | 15.35 | .0 |



J. A. AIR CENTER

J A Air Center
3N060 Powis Road
Du Page Airport
West Chicago, IL. 60185
630/584-3200
630/584-7883 Fax Number
FAA Approved Repair Station NF2R029L

Customer Id. 724010
VALLEY AIR SERVICE
416 RENNER DRIVE

ELGIN            IL 60123-6903

Registration #  N17WC
Make.........   CESSNA
Model........   550
Serial Number.  550-0478
Aircraft Time.    5,384
Date In.......  11/09/05
Date Completed  11/14/05

---

Billing Summary
Inside Labor Charges                         4,180.
Materials And Accessories                      157.
Misc. Other & Freight                          156.
Tax At .0675                                    10.

PAY THIS AMOUNT                              4,504.

I hereby authorize the above repair work to be done along
with necessary materials. You and your employees may operate
above aircraft for purposes of testing. Inspection or delivery
at my risk. An express mechanic's lien is acknowledged on above
aircraft to secure the amount of repairs thereto. You will not
be held responsible for loss or damage to aircraft or articles
left in aircraft in case of fire, theft, accident, freezing,
or any other cause beyond your control.

---

ENDORSEMENTS ENTERED IN LOG BOOK
                            Progressive
Preliminary Insp...._____  Operations 1-2-3-4.._____
Hidden Damage Insp.._____  50 Hour............_____
Progressive Insp...._____  100 Hour..........._____
Final Insp........._____   Annual............._____

---

Work Performed By........  Employee No __   Date _11/14/05_
Preliminary Inspection...  Employee No __   Date _11/14/05_
Hidden Damage Inspection.  Employee No. __  Date _11/14/05_
Final Inspection.........  Employee No. __  Date _11/14/05_
Approved By.............   Employee No. __  Date _11/14/05_
The Aircraft and/or components identified above were repaired
and inspected in accordance with current regulations of the
Federal Aviation Agency and was found airworthy for return to
service. Pertinent details of the repair are on file at this
agency under

Work Order No  14517        Date 11/14/05
Signed _____
        DONALD K. MORGAN

"WE SERVICE WHAT WE SELL"

## Flat Rate & Inside Labor Charges

| Item | Discrepancy | Amount |
|------|-------------|--------|

100     PILOTS SIDE WINDOW DEVELOPS FROST BETWEEN PANELS-
REMOVED COCKPIT SEATS, OVERHEAD PANELS, CHART BOXES & BOTH
LH TOP AND BOTTOM SIDEWALLS TO ACCESS THE DEFOG SYSTEM.
FOUND THE SUPPLY HOSE INTACT AND SECURE. WINDOW DEFOG ONLY
OPERATES WHEN FOOTWARMER IS SELECTED OPEN. NO DEFECTS NOTED.
REINSTALLED INTERIOR AS REQUIRED.
    Labor Hours     13.2 @ 88.00 /Hr     **1,161.60**

101     THROTTLES NOT ALIGNED-
INSPECTED & RERIGGED BOTH ENGINE CONTROLS IN ACCORDANCE WITH
THE CESSNA 550 MAINTENANCE MANUAL. OPERATIONAL CHECKED AND
RIGGED AS NECESSARY ON RUNUP AND RESAFETIED AS NECESSARY.
    Labor Hours     17.8 @ 88.00 /Hr     **1,566.40**

102     LH FOUL WINDOW LEAKS AIR IN FLIGHT-
ADJUSTED FOUL WEATHER WINDOW HINGES AS REQUIRED.
    Labor Hours     2.6 @ 88.00 /Hr     **228.80**

200     RIG AILERON SYSTEM-
INSPECTED AILERON SYSTEM. REMOVED FLOOR IN AFT CABIN
AND LOCKED BELLCRANK. REMOVED COCKPIT FLOOR TO INSPECT
PULLEYS AND CABLES. CHECKED TRAVELS AND FOUND TO BE IN
SPECIFICATIONS AS PER CESSNA 550 MAINTENANCE MANUAL
27-11-00. REINSTALLED ALL PANELS AND CARPET.
    Labor Hours     5.0 @ 88.00 /Hr     **440.00**

201     RIG AILERON TRIM SYSTEM-
INSPECTED TRIM SYSTEM. FOUND TRAVELS OUT OF RIG. RIGGED
AILERON TRIM TRAVELS AS PER CESSNA 550 MAINTENANCE MANUAL CH
27-11-00. OPERATIONAL CHECK SATISFACTORY.
    Labor Hours     3.5 @ 88.00 /Hr     **308.00**

500     CHECK GEAR DOOR WHEN RETRACTED, NOISE REPORTED DURING
FLIGHT-
JACKED AIRCRAFT AND CYCLED GEAR. FOUND NORMAL OPERATION
OF GEAR. INSPECTED AND FOUND NO DEFECTS. COULD NOT DUPLICATE
DISCREPANCY. RESERVICED HYDRAULIC RESERVOIR.
    Labor Hours     5.4 @ 88.00 /Hr     **475.20**

## Material And Accessories

| Part# | Description | Qty | Price | Amount |
|-------|-------------|-----|-------|--------|
| 3008787 | ROD END | 2 | 70.53 | 141.06 |
| MS17825-4 | NUT | 1 | 2.17 | 2.17 |
| SKYDROL | 500B4  HYD FLUID  PT | 1 | 14.20 | 14.20 |

Total Materials And Accessories                                157.43



J. A. AIR CENTER

INC.

## Miscellaneous Charges

| Ven# | Services | Repairs | Other | Freight |
|------|----------|---------|-------|---------|
|  | SHIPPING HANDLING & INSURANCE | | | 25.70 |
|  | MISC. EPA | | 130.89 | |
| Total Outside Services | | .00 | 130.89 | 25.70 |



**Aviation Fabricators, Inc.**
805 North 4th St.
Clinton MO   64735

| Invoice | 12601 |
|---|---|
| Date | 11/1/2005 |
| Page | 1 |

**Bill To:**

Valley Air Services
416 Renner Drive
Elgin IL   60123

**Ship To:**

Valley Air Services
416 Renner Drive
Elgin IL   60123

| Purchase Order No. | Customer ID | Salesperson ID | Shipping Method | Payment Terms | Req Ship Date | |
|---|---|---|---|---|---|---|
| VERBAL | VALLEYAIRSERVIC | CSK | FEDEX P1 | Credit Card | 11/1/2005 | |

| Ordered | Shipped | B/O | Item Number | Description | Discount | Unit Price | Ext Price |
|---|---|---|---|---|---|---|---|
| 1 | 1 | 0 | 80037-123 (OHC) | Hot Liquid Container, PPI, OHC S/N 525  2 | $0.00 | $795.00 | $795.00 |
| 1 | 1 | 0 | 80037-123 (CORE) | Hot Liquid Container, PPI, Core Charge | $0.00 | $500.00 | $500.00 |

Includes Spigot
Amex 3783 4689 6401 008  Exp 08-09

| | |
|---|---|
| Subtotal | $1,295.00 |
| Misc | $0.00 |
| Tax | $0.00 |
| Freight | $33.15 |
| Trade Discount | $0.00 |
| Total | $1,328.15 |

J A Air Center
3N060 Powis Road
Du Page Airport
West Chicago, IL. 60185
630/584-3200
630/584-7883 Fax Number
FAA Approved Repair Station NF2R029L

Customer Id. 724010
VALLEY AIR SERVICE
416 RENNER DRIVE

ELGIN        IL 60123-6903

Registration #   N17WC
Make..........   CESSNA
Model.........   550
Serial Number.   550-0478
Aircraft Time.    5,372
Date In.......   10/20/05
Date Completed   10/21/05

---

Billing Summary
Inside Labor Charges         1,070.1
Misc. Other & Freight        16.1

PAY THIS AMOUNT         1,086.2

I hereby authorize the above repair work to be done along
with necessary materials. You and your employees may operate
above aircraft for purposes of testing. Inspection or delivery
at my risk. An express mechanic's lien is acknowledged on above
aircraft to secure the amount of repairs thereto. You will not
be held responsible for loss or damage to aircraft or articles
left in aircraft in case of fire, theft, accident, freezing,
or any other cause beyond your control.

---

ENDORSEMENTS ENTERED IN LOG BOOK

Preliminary Insp...._____
Hidden Damage Insp.._____
Progressive Insp...._____
Final Insp.........._____

Progressive
Operations 1-2-3-4..
50 Hour............._____
100 Hour............_____
Annual.............._____

---

Work Performed By........   Employee No _____   Date _10/21/05_
Preliminary Inspection...   Employee No _____   Date _10/21/05_
Hidden Damage Inspection.   Employee No. _____   Date _10/21/05_
Final Inspection.........   Employee No. _____   Date _10/21/05_
Approved By..............   Employee No. _____   Date _10/21/05_
The Aircraft and/or components identified above were repaired
and inspected in accordance with current regulations of the
Federal Aviation Agency and was found airworthy for return to
service. Pertinent details of the repair are on file at this
agency under

Work Order No  14465      Date 10/21/05
Signed_____
     DONALD K. MORGAN

## Flat Rate & Inside Labor Charges

| Item | Discrepancy | Amount |
|------|-------------|--------|
| 200 | ELEVATOR TRIM IMPROPERLY RIGGED- INSPECTED ELEVATOR TRIM SYSTEM CABLE TRAVEL AND INSTALLATION CORRECTED RIGGING OF THE TRIM TAB ACTUATOR, STOP BLOCKS AND CABLE TENSION IN ACCORDANCE WITH THE 550 MAINTENANCE MANUAL CHAPTER 27-31-00.  OPERATIONAL CHECK SATISFACTORY. | |
| | Labor Hours      11.4  @ 87.00 /Hr | 991.80 |
| 201 | RUDDER TRIM OVER TRAVELS LEFT AND RIGHT- ADJUSTED RUDDER TRIM FOR 10 DEGREES OF TRAVEL LEFT AND RIGHT. SECURED STOP BLOCK IN ACCORDANCE WITH CESSNA 550 MAINTENANCE MANUAL 27-21-00. | |
| | Labor Hours          .9  @ 87.00 /Hr | 78.30 |

No. 206465

JOLIET AVIONICS, INC.

3N060 Powis Road • West Chicago, IL 60185-1097      724010

Phone: (630) 584-3200 • Fax: (630) 584-7883 • Outside Illinois: (800) 333-5966

| | |
|---|---|
| Date | 10-21-05 |
| Cust. Order No. | |
| Promised | 0550 |

NAME  VALLEY AIR SERVICE

Address  416 RENNER DRIVE

City  ELGIN, IL    60123

Type AC  Citation
Aircraft Reg. No.  N117WC

Cust. Phone No.  847-468-7473

| Make | NAV-COM | POWER SUPPLY | VOR-ILS-LOC. | DME | VGR-ILS-LOC. | TRANS PX |
|---|---|---|---|---|---|---|
| Model | | | | | | |
| Serial No. | | | | | | |

Spec. Instr.   550.0478

TERMS:

OPER. NO.

☐ CASH   ☐ CHARGE   ☐ WARRANTY   ☐ NO CHARGE

WORK ORDER INSTRUCTIONS

PILOTS PTT/INTERCOM SW BAD

Verified - Replaced

Ran Test, oper Norm

385-4321
Switch

4750

TOTAL LABOR HOURS

AUTHORIZED BY

I HEREBY AUTHORIZE THE ABOVE REPAIR WORK TO BE DONE ALONG WITH NECESSARY MATERIAL. YOU AND YOUR
EMPLOYEES MAY OPERATE ABOVE AIRCRAFT FOR PURPOSES OF TESTING, INSPECTION OR DELIVERY AT YOUR RISK.
AN EXPRESS MECHANIC'S LIEN IS ACKNOWLEDGED ON ABOVE AIRCRAFT TO SECURE THE AMOUNT OF REPAIRS
THERETO. YOU WILL NOT BE HELD RESPONSIBLE FOR LOSS OR DAMAGE TO AIRCRAFT OR ARTICLES LEFT IN AIRCRAFT
IN CASE OF FIRE, THEFT, ACCIDENT, FREEZING, OR ANY OTHER CAUSE BEYOND YOUR CONTROL.

SERVICE POLICY

All work is performed by qualified technicians and all materials used in the repair of this set are fully
and are guaranteed for a period of 50 days after the date of repair. Due to the complex nature of modern
electronic equipment, many defects which seem identical can be caused by any one of many parts or circuits.
It is therefore impossible to assume responsibility for any portion of your instrument (parts or circuits) on which
we have not performed service at this time. We also guarantee that your set will be restored to its normal
performance upon completion of our repairs. However, in the event of dissatisfaction with set performance,
we must be notified within 48 hours after set is delivered or repaired.

| | |
|---|---|
| TOTAL LABOR | 148 50 |
| TOTAL PARTS | 475 00 |
| SALES TAX | 39 06 |
| FREIGHT | 15 50 |
| EPA/MISC. SUPPLIES | 4 46 |
| TOTAL AMOUNT | 675 52 |

TOTAL PARTS

rk performed by:        EMPLOYEE NO.

liminary inspection:                              Date  2-28-06

ion damage inspection:                           Date  2-28-06

al inspection:                                   Date  2-28-06

proved by:                                       Date  2-28-06

Aircraft and/or components identified above were repaired and inspected in accordance with current regulations of the
Federal Aviation Agency and was found airworthy for return to service. Pertinent details of the repair are on file at the Agency under

rk Order No.  206465                             Date  2-28-06

 med:

FOR:  J. A. AIR CENTER
      JOLIET AVIONICS, INC.
      FAA Approved Repair Station No. NF2R029L

J.A Air Center
3N060 Powis Road
Du Page Airport
West Chicago, IL. 60185
630/584-3200
630/584-7883 Fax Number
FAA Approved Repair Station NF2R029L

Customer Id. 724010
VALLEY AIR SERVICE
416 RENNER DRIVE

ELGIN                IL 60123-6903

| | |
|---|---|
| Registration # | N17WC |
| Make.......... | CESSNA |
| Model......... | 550 |
| Serial Number. | 550-0478 |
| Aircraft Time. | 5,384 |
| Date In....... | 10/24/05 |
| Date Completed | 11/04/05 |

------------------------------------------------------------

Billing Summary
Inside Labor Charges                    246.

PAY THIS AMOUNT                         246.

I hereby authorize the above repair work to be done along
with necessary materials. You and your employees may operate
above aircraft for purposes of testing. Inspection or delivery
at my risk. An express mechanic's lien is acknowledged on above
aircraft to secure the amount of repairs thereto. You will not
be held responsible for loss or damage to aircraft or articles
left in aircraft in case of fire, theft, accident, freezing,
or any other cause beyond your control.
------------------------------------------------------------

ENDORSEMENTS ENTERED IN LOG BOOK            ɔ~
                           Progressive
Preliminary Insp...._____   Operations 1-2-3-4.._____
Hidden Damage Insp.._____   50 Hour............._____
Progressive Insp...._____   100 Hour............_____
Final Insp.........._____   Annual............._____
------------------------------------------------------------
Work Performed By........  Employee No  ɔ~   Date  11/4/05
Preliminary Inspection...  Employee No  ɔ~   Date  11/4/05
Hidden Damage Inspection.  Employee No  ɔ~   Date  11/4/05
Final Inspection.........  Employee No  ɔ~   Date  11/4/05
Approved By.............   Employee No  ɔ~   Date  11/4/05
The Aircraft and/or components identified above were repaired
and inspected in accordance with current regulations of the
Federal Aviation Agency and was found airworthy for return to
service. Pertinent details of the repair are on file at this
agency under

Work Order No  14469              Date 11/04/05
Signed_____
      DONALD K. MORGAN

## Flat Rate & Inside Labor Charges

**Item   Discrepancy**                                              Amount

100      "N" NUMBER DECALS ON LEFT SIDE OF VERTICAL STAB. ARE
         PEELING OFF.
         REMOVED DECALS FROM THE LEFT SIDE OF THE VERT. STAB. CLEANED
         AREA, ALIGNED AND INSTALLED CUSTOMER SUPLPLIED DECALS.
         Labor Hours        2.8  @ 88.00 /Hr

                                                                    246.40



# WOODLAKE
## REFINISHING, INC.
### Aircraft

Sandwich Airport
850 Piper Way
Sandwich, Illinois 60548

Larry Baechl
(815) 786-253
Fax (815) 786-900

Name __Valley Air Service__      Date __10-6-06__

Address _____      Invoice No. _____

Phone __1-847-468-7473 FAX - 468-7576__     Registration No. _____

Hourly Rate __$65.00__

| YEAR | MAKE | MODEL | REGISTRATION NO. | SERIAL NO. | MFG. PAINT NO. | TOTAL TIME |
|------|------|-------|------------------|-----------|----------------|------------|
| | Cessna | Citation II | | | | |

| | SUBLET WORK | PARTS AND MATERIALS | LABOR | REFINISHING |
|---|---|---|---|---|
| Repair filler around door (falling off) Prime and Paint white, Layout and blend 3 stripes then apply clearcoat. | | | 56.0 @ $65.00 | $3640— |
| Paint 1 gallon kit PRC Desoto Matterhorn White | | $758.85 | | |
| Acry-glo stripe colors 1 quart kit each color | | $288.18 | | |
| Prep Materials | | $75 — | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| SUB TOTALS | | | | |

Woodlake Refinishng, Inc. does not warranty corrosion or paint damage due to the environment.

Signature _____

This estimate is based on our inspection and does not cover additional parts or labor which may be required after the work has been started. After the work has started, worn or damaged parts will evident on first inspection may be discovered. Naturally this estimate cannot cover such cost Parts prices subject to change without notice. This estimate is for immediate acceptance.

|  | TOTAL | 4762 03 |
|---|---|---|
|  | SALES TAX | |
|  | GRAND TOTAL | 4762 03 |

DEPOSITION
39 EXHIBIT
5-30-07 KR

314107

SOLD TO: Valley Air Service Inc

ADDRESS: 1116 Ronnie Drive

CITY STATE ZIP: Elgin Il 60123

SHIPPED TO: PHONE 847-468-7475

ADDRESS:

CITY STATE ZIP:

| CUSTOMER'S ORDER | SALESPERSON | TERMS | VIA | F.O.B. | DATE 3-17-07 |
|---|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| | Touch up paint chips around windshield area using owners supplied paint | | | |
| | 30.6 hours @ $65.00 | | $1,912.50 | |
| | | | | |
| | Materials | | | |
| | plastic tape, primer, sandpaper paper, solvent | | $150.00 | |
| | | | | |
| | | | | |
| | | Totals | $2,162.50 | |
| | | | | |
| | Please make check to | | | |
| | Show Jet Inc | | | |
| | P.O. Box 865 | | | |
| | Oswego, IL 60543 | | | |
| | FEIN 20-8158665 | | | |

```
 1              IN THE UNITED STATES DISTRICT COURT

              FOR THE NORTHERN DISTRICT OF ILLINOIS

 2                      EASTERN DIVISION

 3

 4   VALLEY AIR SERVICE, INC.,    )      ORIGINAL

                                  )

 5            Plaintiff,          )

                                  )

 6       vs.                      )   No. 06 CV 000782

                                  )

 7   SOUTHAIRE, INC., et al.,     )

                                  )

 8            Defendants.         )

 9

10

11              The deposition of STEPHEN COSYNS,

12   called by the Defendants for examination, pursuant to

13   Notice, and pursuant to the Rules of Civil Procedure for

14   the United States District Courts pertaining to the

15   taking of depositions, taken before Joanne M. Brogan, a

16   Certified Shorthand Reporter and a Notary Public in and

17   for the County of Cook and State of Illinois, at Suite

18   1050, 20 South Clark Street, Chicago, Illinois, on

19   Tuesday, May 29, 2007, at the hour of 4:50 o'clock p.m.

20

21

22

23

24
```

**EXHIBIT**

tabbies

6

1 freon was low?
2    A  It appeared to be low.
3    Q  Did you ever have that fixed?
4    A  We just recently did, yes.
5    Q  When you say "recently," how recent is
6 recently?
7    A  Two days ago.
8    Q  Okay. So between October 11th of '05 and
9 two days ago, you've had the freon serviced once,
10 and that was two days ago?
11    A  Repaired.
12    Q  Repaired?
13    A  Correct.
14    Q  Anything else on the aircraft that you
15 blame on or you contribute to Central Flying Service
16 or Mr. Brunner other than the items we just
17 discussed on Exhibit 35?
18    A  At this time I'm not aware of any.
19    Q  So Exhibit 35 are the items that you
20 believe that Central Flying Service and Mr. Brunner
21 should be responsible for?
22    A  I think the only thing that's not included
23 here is the downtime on the aircraft.
24    Q  And what has the downtime on the aircraft

1 been?
2    A  The downtime on the aircraft to complete
3 these items.
4    Q  And you're asking for Central Flying
5 Service or Mr. Brunner to pay that to you?
6    A  Yes.
7    Q  And how much is that?
8    A  I don't know.
9    Q  Have you made any attempt to calculate it?
10    A  No, I have not.
11    Q  So this lawsuit has been filed since
12 December of '05 and you have not made an attempt to
13 calculate that?
14    A  I honestly don't know how you would
15 calculate it.
16    Q  You think it would be pure speculation to
17 calculate that?
18    A  No, I think it would be a monthly average
19 of downtime on the airplane.
20    Q  You would just take an average?
21    A  I would.
22    Q  Because to do otherwise would be to
23 speculate?
24    A  I don't even know how you would speculate

1 it.
2    Q  The agreed purchase price of the aircraft
3 under the contract was $1,925,000; is that correct?
4    A  That is what the contract stated.
5    Q  When was your first conversation with
6 Mr. Brunner about reducing the purchase price?
7    A  I don't think we ever asked him to reduce
8 the price.
9    Q  You never asked Mr. Brunner to reduce the
10 purchase price of the aircraft from $1,925,000?
11    A  Not that I'm aware of. He offered to give
12 us a reduced price.
13    Q  And why did he do that?
14    A  I think he honestly thought we weren't
15 happy with the airplane itself.
16    Q  And so did you agree to accept a reduction
17 in the price of the aircraft?
18    A  I believe we did.
19    Q  So he offered to reduce the price of the
20 aircraft so that you would be happy with the
21 condition?
22    A  You know, I don't recall what the exact
23 wording was on it. Maybe he was just being a nice
24 guy.

1    Q  And because you were not satisfied with the
2 aircraft, did you agree to pay a lesser price?
3    A  I don't recall what the conversation was
4 with Mr. Brunner at that time.
5    Q  Well, did you accept his offer that you
6 would pay a lesser sale price, or did you say, "No,
7 I'm going to insist on paying the original agreed
8 purchase price of $1,925,000"?
9    A  I think if somebody was being a nice guy
10 and offered me an airplane at a reduced price, I
11 think, as a businessman, it would be very good for
12 me to take it.
13    Q  Okay. And does a good businessman
14 gratuitously reduce the purchase price of an
15 aircraft?
16    A  I don't know.
17    Q  Tell me about your conversation with
18 Mr. Brunner when it was discussed that the price
19 would be reduced?
20    A  I don't recall.
21    Q  Who was there?
22    A  I don't even recall that.
23    Q  Was your wife there?
24    A  I don't know.